THOMAS S. FOURACRE, ROBERT M. BURNS. WILLIAM T. PURKS, ISAAC C. ELLIOTT, BENJAMIN A. GROVES, JAMES G. SHAW, and JAMES A. BUCKSON, Levy Court Commissioners, composing and constituting THE LEVY COURT OF NEW CASTLE COUNTY, vs. WILLIAM P. WHITE, JOSEPH S. HAMILTON and GEORGE M. FISHER.

1.  PROHIBITION—JURISDICTION TO ISSUE.

The Superior Court has inherent power to issue a writ of prohibition, notwithstanding Constitution gives that power to Supreme Court.

2.  PROHIBITION—ACTS AND PROCEEDINGS OF PUBLIC OFFICERS.

Superior Court may issue writ of prohibition to prevent the performance of a public act by a tribunal acting under color of law that has in fact no legal existence, provided there is no other immediate and adequate remedy.

3.  PROHIBITION—ACTS AND PROCEEDINGS OF PUBLIC OFFICERS.

When writ of prohibition issues to prevent the performance of a public act, sole question is whether body undertaking to perform the act is a legal body or not, and it is immaterial whether the act sought to be prevented is judicial or ministerial.

4.  STATUTES—TITLE—CONSTITUTIONAL PROVISION—CONSTRUCTION.

Constitutional provision as to statutory title should be liberally construed, and if matters claimed to constitute two subjects are connected with each other and are germane to the primary object of the statute, the act containing them is not invalid.

5.  STATUTES—TITLE—EXPRESSING SUBJECT—INTOXICATING LIQUORS.

Statute whose general subject, as expressed in title, is holding of special election on question of local option, is not unconstitutional because it also contains provisions, not expressed in title, as to election officials and appointment by them of registration officers, since such provisions are germane to the general subject as expressed in the title and necessarily connected therewith.

6.  INTOXICATING LIQUORS—LOCAL OPTION—AUTHORITY TO SUBMIT QUESTION—CONSTITUTIONAL PROVISION.

Under Const. Art. 13, providing that Legislature shall, on request of a majority of its members elected from a certain district, submit at general election question of local option, and may submit that question at special election without such request, it may, when such request has been made, submit question under either mandatory or permissive provision.

7.  CONSTITUTIONAL LAW—LOCAL OPTION—AUTHORITY TO SUBMIT.

Under Const. Art. 13, court cannot compel Legislature to submit to voters of a district question of local option, under request made pursuant to mandatory provision, by denying it right to do so under permissive provision.

8.  CONSTITUTIONAL LAW—DISTRIBUTION OF POWERS—ENCROACHMENT ON LEGISLATURE.

Court has no power to compel Legislature to do something it should have done and failed to do.

9. INTOXICATING LIQUORS—LOCAL OPTION—AUTHORITY TO SUBMIT—CON-
STITUTIONAL PROVISION.

*Held*, that Legislature, in submitting to voters of district at special elec-
tion question of local option, did not act upon request under mandatory pro-
vision of *Const. Art.* 13, but under permissive provision.

10. INTOXICATING LIQUORS—LOCAL OPTION—AUTHORITY TO SUBMIT—CON-
STITUTIONAL PROVISION.

Where request for submission of question of local option has been pre-
sented to and received by Legislature, pursuant to *Const. Art.* 13, it cannot
be withdrawn.

11. INTOXICATING LIQUORS—LOCAL OPTION—CONDUCT OF ELECTION—
OFFICERS.

Where statute providing for submission of question of local option and
directing that election officials should be appointed from lists submitted by
committees in charge of compaigns for and against license makes no provision
for choosing or appointing committees, but parties favoring and opposing
license have long been in existence, appointments made from lists presented
by committees claiming to represent such parties are valid, since it is pre-
sumed that they had authority to do so.

12. STATUTES—CONSTITUTION—CASUS OMISSUS.

When there is clearly a *casus omissus in a statute*, the courts are powerless
to supply it.

13. STATUTES—CONSTRUCTION—CASUS OMISSUS.

Statutes should not be declared inoperative on the ground that there is
an omission, unless it is very clear that there is such a defect.

14. STATUTES—CONSTRUCTION—PRESUMPTION OF VALIDITY.

A statute reasonably susceptible of two constructions, one of which will
render it void and the other valid, must be construed so as to make it valid.

15. STATUTES—CONSTRUCTION—PROVISOS.

Though a proviso in a statute applies ordinarily only to the section or
paragraph to which it is attached, it is held to apply to other sections, where
the context requires it, or it is necessary to carry into effect the evident intent
of the Legislature as it appears from the whole act.

16. STATUTES—CONSTRUCTION—PROVISOS.

Where statute provided that governor should appoint registration offi-
cials for an election from names submitted to him by committees having
charge of campaigns for and against license, provided that, if such lists were
not furnished, he should appoint "suitable persons having the qualifications
provided for in this section," and in a later paragraph of the same section
directed the appointment of other officials from similar lists, without similar
proviso in case no such lists were furnished, proviso will be construed as
applying to latter paragraph also.

CONRAD and HEISEL, J. J., dissenting.

(*August* 1, 1917.)

Judges RICE and HEISEL sitting.

*Frank L. Speakman, Robert G. Harman, Robert H. Richards* and *Herbert H. Ward* for petitioners.

*Caleb E. Burchenal* and *Horace G. Eastburn* for respondents.

Superior Court, New Castle County, May Term, 1917.

Rule to show cause, No. 146, May Term, 1917.

PETITION with affidavit annexed, by Thomas S. Fouracre and others, Levy Court Commissioners, composing and constituting "the Levy Court of New Castle County," for a rule to show cause why a writ of prohibition should not issue to William P. White and others, who had been appointed and commissioned by the Governor to act as and to constitute the "Department of Elections for the City of Wilmington," under *Chapter* 111, *Volume* 29, *Laws of Delaware.*

The rule was awarded by the Superior Court and respondents waived the issuance thereof and appeared gratis without prejudice.

There was a motion to discharge the rule and dismiss the petition. On joint application of parties the questions arising were heard by the Court in Banc. Motion refused and writ denied.

It was averred in the petition *inter alia* that the petitioners are the duly elected Levy Court Commissioners for the several Levy Court districts of New Castle County, and as such compose and constitute "the Levy Court of New Castle County;" and in such capacity are charged with the duty of raising by taxation, appropriating and paying out such sums of money as are necessary to defray the legitimate expenses of the government of the said New Castle County and of the several parts thereof.

That the Governor of the State of Delaware, on or about the twenty-ninth day of June, 1917, appointed, and issued commissions to the following named persons to act as and to constitute the "Department of Elections for the City of Wilmington," provided for by the pretended act of the General Assembly mentioned and referred to in the next succeeding paragraph hereof,

to wit: William P. White, Joseph S. Hamilton and George M. Fisher, the defendants herein, and James H. Kane and Timothy J. Mooney.

That the said appointments by the Governor of the said five persons were made under color of a pretended act of the General Assembly of the State of Delaware entitled, "An act providing for the submission to the vote of the qualified electors of the City of Wilmington as one district, and to the qualified electors of the remaining part of New Castle County as one district, as mentioned in *Section* 2, *Article* XIII of the *Constitution* of the State of Delaware, the question whether the manufacture and sale of intoxicating liquors shall be licensed or prohibited within the limits of the said two districts in accordance with said *Article* XIII of said *Constitution* and fixing penalties for the illegal manufacture and sale of intoxicating liquors in either of said districts wherein there shall be a majority of votes cast against license;" which said pretended act of the General Assembly the defendants allege was passed by the General Assembly of the State of Delaware, at its biennial session held in the year 1917, and allege was approved by the Governor of said state on the fifth day of April, A. D. 1917, and which said pretended act of the General Assembly appears printed in *Volume* 29 of the *Laws of Delaware* as *Chapter* 111 thereof, a copy whereof is attached hereto; and that the said appointments were so made by the Governor particularly pursuant to the pretended authority of *paragraphs* 4 and 5 of *Section* 2 of said pretended act, which said paragraphs are as follows, to wit:

"The Governor shall also, sometime in the month of June aforesaid (1917) appoint five suitable persons of the City of Wilmington for the purpose of conducting the election provided for in this act. The said persons so apponted shall be selected from a list of names submitted by the committee having charge of the campaign against license, and from a list of names submitted by the committee having charge of the campaign for license, and not more than three of said persons shall be appointed from either of said lists.

"This committee so appointed shall be known as the Department of Elections for the City of Wilmington herein provided for and shall perform all the duties in relation to said election, and in relation to the registration therefor, shall have all the power and authority and shall be subject to all the duties and obligations so far as said election is concerned now devolving upon the Department of Elections of the City of Wilmington under the provisions of *Chapter* 57 of the *Revised Statutes* of the State of Delaware."

That at the time of making said appointments and of issuing said commissions, on the said twenty-ninth day of June, 1917, and prior thereto, there had been submitted to the Governor, and he had before him, a list of names presented and submitted by certain individuals styling themselves "the Committee having charge of the campaign against license," which said list of names was then and there intended to be a list from which the Governor should select not less than two nor more than three of the five persons which the above quoted *paragraphs* 4 and 5 of said *Section* 2 of said pretended act of the General Assembly provide for to be known as the "Department of Elections for the City of Wilmington" for the purpose of conducting the special election authorized in said pretended act of the General Assembly; but that, at the time of making said appointments and issuing said commissions there had not been submitted to the Governor any other list of names by any persons styling themselves "The Committee having charge of the campaign for license" or by any other person or persons whomsoever, nor did the Governor, then and there, have any such other list before him.

That the Governor, without there having been submitted to him the two lists of names provided for in the above quoted paragraphs of said *Section* 2 of said pretended act and without having both such lists before him, without any lawful authority to appoint the committee of five persons to be known as the "Department of Elections for the City of Wilmington" provided for and contemplated by the said paragraphs of said pretended act, nevertheless exercising a power he did not possess, appointed five persons to constitute said department of elections, to wit, the said defendants and the said James H. Kane and Timothy J. Mooney, three of whom, to wit, the said defendants, were appointed from the said list so as aforesaid submitted by the persons styling themselves "The Committee having charge of the campaign against license," and the remaining two of whom, to wit, the said Kane and the said Mooney, were appointed, not from a list of names submitted to the Governor by "The Committee having charge of the campaign for license" (no such list having been so submitted), but in

some manner unknown to and contrary to the provisions of the said pretended act of the General Assembly.

That the said action of the Governor in appointing the said five persons was and is wholly illegal and void. That the said five persons do not and cannot constitute the said department of elections contemplated by said pretended act of the General Assembly.

That of the said five persons so appointed as aforesaid, the three defendants, on the thirtieth day of June, A. D. 1917, met together in the City of Wilmington and assumed and pretended to constitute the said department of elections and assumed and pretended to organize themselves, as the said department of elections, by electing the said White as president and by electing a certain Charles A. Hagner secretary. That the said Kane and the said Mooney were not present at said pretended organization of said pretended department of elections and, as your petitioners are informed and believe, have not participated in any of the acts or doings of the said three defendants so as aforesaid assuming to act as the said department of elections; and the said Kane and the said Mooney have not assumed to act as members of any such department of elections, nor have they assumed to take the oath of office or otherwise to qualify as members of such department.

That the said action of the defendants in so pretending and assuming to constitute the said department of elections, and in organizing as such, was and is wholly illegal and void, and without any warrant or authority in law.

That on the said thirtieth day of June, 1917, the said defendants, so as aforesaid pretending and assuming to act as the said department of elections, received a list of names for registration officers from the said persons styling themselves "The Committee having charge of the campaign against license," and then and there the said defendants appointed and named from said list certain registration officers to conduct and hold the registration authorized by said pretended act of the General Assembly for the purpose of said special election authorized to be conducted by said pretended act, and that the said defendants, without having

received any other list of names for registration officers from any persons styling themselves "The Committee having charge of the campaign for license," then and there also named and appointed other registration officers to conduct and hold the said registration, claiming that the said other registration officers are representatives of those persons who are in favor of license in the said City of Wilmington.

That the said defendants, so as aforesaid illegally pretending and assuming to act as said department of elections, have been, since the said last-mentioned date, and up to and including the present time, are proceeding to act as a legally constituted department of elections for the City of Wilmington as provided for by said pretended act, and have been and are doing all the various acts and discharging the duties and functions incumbent upon a legally created department of elections under said pretended act.

That the Department of Elections for the City of Wilmington created by the said *Section* 2 of said pretended act of the General Assembly is a judicial body or, at least, a quasi judicial body. The acts, duties and functions required by law to be performed by said department are both judicial and ministerial. Many of the acts, duties and functions to be performed by said department involve the exercise of judgment and discretion; such as passing upon the question as to whether registration officers appointed by said department are residents and voters, passing upon the question as to whether the oath of office has been taken by such registration officers in accordance with law, dismissing or removing registration officers for cause and filling the vacancies so caused by the appointment of other persons possessing the proper legal qualifications, etc.

That the petitioners are informed and believe, and therefore aver, that many of the persons named and appointed to serve as registration officers by the said defendants, as heretofore averred, have refused to serve as such registration officers upon the ground that the said defendants had and have no legal authority to appoint them, and such persons, so refusing as aforesaid, have given notice to said defendants of their said refusal. Your petitioners particularly aver that the following named persons, to wit:

Charles P. Saylor, First District of the Seventh Ward; Lewis A. Boehm, Second District of the Sixth Ward; Levin L. Shockley, Fifth District of the Seventh Ward, who were so appointed by the said defendants to serve as registration officers in the said City of Wilmington, have refused to serve upon the said ground that the said defendants have no legal authority to appoint them.

That the said defendants, so as aforesaid pretending to constitute the said department of elections, intend and are about to appoint other persons to serve as registration officers in place of those above mentioned who have refused to serve, as aforesaid, and also intend and are about to administer the oath required by law to persons whom they have heretofore appointed and whom they intend hereafter to appoint to serve as registration officers under the provisions of said pretended act.

That said pretended act of the General Assembly, in so far as it provides for an election to be held in the said City of Wilmington, is illegal, unconstitutional and void in that it was not passed by a two-thirds vote of the said General Assembly.

That the said pretended act of the said General Assembly is illegal, unconstitutional and void in that, prior to the introduction of the bill in the said General Assembly and prior to the enactment of the same by the said General Assembly, a majority of all the members elected to each house of the General Assembly by the qualified electors in the local option district consisting of that part of New Castle County which remains after eliminating the City of Wilmington therefrom, created by *Section* 2 of *Article* XIII of the *Constitution* of the State of Delaware, by a written petition presented to the said General Assembly, requested of the said General Assembly, the submission of the question of license or no-license to a vote of the qualified electors in said district; and, after such request, the said General Assembly was wholly without power to receive, consider or act upon the said bill, or to pass the said pretended act.

That the said pretended act is unconstitutional and void in that the body of the said pretended act deals with two entirely separate and distinct subjects, but one of which is expressed in the title of said pretended act.

That the said pretended act of the General Assembly is in conflict with *Section* 16 of *Article* II of the Constitution of the State of Delaware; and also is in conflict with *Article* XIII of said Constitution.

That the said pretended act of General Assembly is in conflict with the Fourteenth Amendment to the Constitution of the United States.

That the said defendants assumed to act as and to constitute the said department of elections solely under color of, by virtue of, and under the authority of the said pretended act of the General Assembly, so as aforesaid appearing printed as *Chapter* 111 of *Volume* 29 of the *Laws of Delaware*, and under color of, by virtue of, and under the supposed authority of the said pretended appointments of them, so as aforesaid made by the Governor of the State of Delaware, and the said commissions issued to them by the said Governor.

That the said defendants, in so assuming to act as said department of elections, and in so assuming to perform the duties and functions of such pretended department of elections, have been and are exercising a jurisdiction which they do not lawfully possess, and have been and are performing acts both of a judicial and ministerial nature which are in excess of any jurisdiction or powers that they possess or can possess under said pretended act of the General Assembly; and in doing acts and things hereafter intended to be done by them, as aforesaid, the said defendants will likewise be exercising a jurisdiction which they do not lawfully possess and will likewise be performing acts, both judicial and ministerial, which are in excess of any jurisdiction they can lawfully possess under said pretended act.

That the said acts of the defendants already done and to be done in the future have involved and will involve the incurring of large indebtedness, which will have to be paid by your petitioners, constituting the said Levy Court, and have involved and will involve great expense to the taxpayers of said New Castle County. The amount of such expense has been estimated to approximate the sum of forty thousand to fifty thousand dollars,

and in contemplation thereof your petitioners, constituting the said Levy Court, in making up their budget of expenses for the government of said county, for the current year, have included an item of forty thousand dollars to cover the expense which will be incurred by the registration and election provided for under said pretended act of the General Assembly, and by far the greater portion of said expense will be incurred by the registration and election which the said defendants are now assuming to conduct, and will herafter assume to conduct, in the said City of Wilmington; and unless the said defendants shall be prohibited from unlawfully exercising the said jurisdiction which they do not possess, the said large expense hereafter to be created will be presented as claims against your petitioners, constituting the said Levy Court, and the said Levy Court will be required to pay the same.

That the judicial acts heretofore performed by said defendants, to wit, the appointments of said registration officers, the administering of the oath of office to such registration officers, etc., were done *ex parte* and without any opportunity for your petitioners then and there, to object to the jurisdiction of said defendants, but your petitioners have not at any time consented to the exercise of any such jurisdiction by said defendants.

After averring that they had no other adequate remedy, the petitioners prayed that a writ of prohibition may issue prohibiting and enjoining the respondents from proceeding further to act as the Department of Elections for the City of Wilmington as provided for under said pretended act of the General Assembly and from proceeding further to appoint any person or persons to serve as registration officers under said pretended act, and from proceeding further to administer the oath of office to or qualify any such persons to serve as registration officers as aforesaid, and from proceeding further to contract any indebtedness of any kind whatsoever resulting from any exercise of jurisdiction by said defendants as a department of elections for the City of Wilmington, such as is mentioned and referred to in said pretended act, and for such other relief as shall seem meet and the circumstances of the case may require.

The respondents assigned the following reasons for the discharge of the rule and dismissal of the petition:

That the Superior Court has no jurisdiction to issue writs of prohibition, such jurisdiction being lodged only in the Supreme Court of the State of Delaware.

That the duties to be performed by the said department of elections are purely ministerial, while the writ of prohibition can only be issued to restrain those to whom it is directed against the exercise of judicial functions.

That the allegations of fact in the petition are against the department of elections as officers in the exercise of administrative duties, and, therefore, the court is without jurisdiction to issue a writ of prohibition.

That the petitioners have full and adequate remedies at law, and, therefore, a writ of prohibition will not lie in the premises.

On the joint application of the parties, the court directed that the several questions of law arising be heard by the Court in Banc, it being agreed that the judgment of the Superior Court entered in pursuance of the opinion of the Court in Banc should be final.

Argued in the Court in Banc before PENNEWILL, C. J., and BOYCE, CONRAD, RICE and HEISEL, J. J.

It was made known to the court that if it should hold that it has jurisdiction in the premises, counsel for the respondents are ready to file their return to the rule, at the conclusion of the argument on the motion to discharge the rule, and that upon the return being filed, counsel for the petitioners will move to quash the return because the same is not sufficient in law on the ground that the statute under which the Governor had appointed the respondents to act as the said department of elections is unconstitutional, void and inoperative.

On the motion to discharge the rule, it was contended for the respondents that the Superior Court did not have authority to issue the writ of prohibition.

That the only time the writ of prohibition had issued in this state was in the case of *Clendaniel v. Conrad*, 3 *Boyce*, 549, 83 *Atl.*

1036, *Ann. Cas.* 1915*B*, 968, when the writ issued out of the Supreme Court. *Const. Art. IV*,    12 (5); *Rev. Code* 1915, §3712.

That the writ is of very ancient origin, and originally issued out of the Court of King's Bench of England, corresponding to the Supreme Court of this state, to keep particular courts within the limits of their particular jurisdiction. 2 *Sellon's Prac.* 308, 310 (*Ed.* 1813); 2 *Bailey on Habeas Corpus*, §355.

That the writ can only issue to restrain the exercise of judicial functions. 2 *Bailey on Habeas Corpus*, §§ 355, 1378; *High on Ex. Leg. Rem.* §§ 782, 626, 568 (2d *Ed.*); 32 *Cyc.* 600, 602; *Fleming v. Guthrie*, 3 *L. R. A.* 57 (note); 16 *Ency. of Pl. & Prac.* 1094, 1096; *Mechem on Pub. Off.* §§ 1013, 1019, 672; 3 *Bouv. Dict.* 2740; *Williamson v. County Court*, 3 *Ann. Cas.* 357 (note); *Smith v. Whitney*, 116 *U. S.* 167, 177, 6 *Sup. Ct.* 570, 29, *L. Ed.* 601, 604; *State v. Clark County*, 41 *Mo.* 44, 50; *Thomson v. Tracy*, 60 *N. Y.* 31, 37; *Ex-parte Braudlacht*, 2 *Hill* (*N. Y.*) 367, 38 *Am. Dec.* 593; *Hobart v. Tillson*, 66 *Cal.* 210, 5 *Pac.* 83.

That the writ will not issue in this case, unless it be shown that the functions being exercised by the respondents are judicial.

The functions of the Department of Elections of the City of Wilmington under the statute are not judicial in their character. 1 *Bouv. Law Dict.* 116; 2 *Bouv. Law Dict.* 1733; *People ex rel. Morgan v. Hayne*, 83 *Cal.* 111, 23 *Pac.* 1, 7 *L. R. A.* 348, 17 *Am. St. Rep.* 211; *Mechem on Pub. Off.* § 1020; *Hobart v. Tillson*, 66 *Cal.* 210, 5 *Pac.* 83.

That the office of the writ is to restrain subordinate courts and inferior judicial tribunals from exceeding their jurisdiction. *Camron v. Kenfield*, 57 *Cal.* 550; *People v. Dist. Court*, 6 *Colo.* 534; *State v. Goodier*, 195 *Mo.* 551, 93 *S. W.* 928; *State v. Hathaway*, 115 *Mo.* 36, 21 *S. W.* 1081; *Higgins v. Talty*, 157 *Mo.* 280, 57 *S. W.* 724; *Taylor v. Board of Election Commis.*, 54 *Cal.* 404; *People v. McWilliams*, 185 *N. Y.* 92, 77 *N. E.* 785; *Kalbfell v. Wood*, 193 *Mo.* 675, 92 *S. W.* 233; *State v. Dept. of Elections*, 5 *Boyce*, 213, 91 *Atl.* 993.

That the cases clearly illustrate the fact that the test of a

judicial function is when there is a judicial hearing before a judicial body in regard to a controverted fact.

That the acts of the department of elections are purely administrative. The only judgment which the members of the department must render is a common-sense judgment, or such as any administrative officer or any business man must render in connection with his affairs.

That in order for the writ to issue there must be no other remedy which affords redress. *High on Leg. Rem.* § 770 (2d Ed.); 2 *Bailey on Hab. Corp.* § 357a.

That the purpose of this proceeding being to test the validity of the statute in question which can be determined in many other ways, the writ should be denied.

In reply, it was urged on behalf of the petitioners that the Superior Court has always had the power to issue the common-law writ of prohibition. *Clendaniel v. Conrad,* 3 *Boyce,* 549, 83 *Atl.* 1036, *Ann. Cas.* 1915B, 968; *Conn. Rin. Co. v. County Comms.,* 127 *Mass.* 50, 34 *Am. Rep.* 338.

That the jurisdiction and power of the Superior Court to issue the writ are both constitutional and statutory. *Const. Art.* 4, § 7; *Rev. Code* 1915, §§ 3725 and 3735; *Rash v. Allen,* 1 *Boyce,* 444, 76 *Atl.* 370; 1 *Woolley on Del. Prac.* § 17.

That in this state the power to issue the writ of prohibition is not confined to inferior courts. The Superior Court in the exercise of its superintending control may use all or any of the common-law writs, or other writs essential to its exercise—it may mould all necessary writs for the purpose. *Cullen v. Lowery,* 2 *Harr.* 292; *Cloud v. State,* 2 *Harr.* 361; *King v. Reading,* 5 *Harr.* 399; *State v. Tull,* 2 *Boyce,* 126, 78 *Atl.* 299; *State v. Thorne,* 5 *Boyce,* 335, 93 *Atl.* 557; *State ex rel. Johnson,* 103 *Wis.* 591, 79 *N. W.* 1081, 51 *L. R. A.* 33; *Rev. Code* 1915, § 3726.

That the various powers and duties to be exercised by the department of elections under the statute, are, at least, quasi judicial in their nature, and some of them are clearly judicial, and that the writ will issue to such a body.

That *Section* 12 (5), *Art. IV,* of the *Constitution,* does not limit the right to issue the writ to the Supreme Court.

That the *Rash-Allen Case, supra,* determined that the last-mentioned provision of the Constitution has nothing to do with the common-law power and jurisdiction of the Superior Court, which possesses the powers of the Courts of King's Bench, Common Pleas, and Exchequer of England. 3 *Black, Cons.* 112; 8 *Bacon's Abridg.* 206; 16 *Ency. Pl. & Prac.* 1096; *Ex parte Ray,* 45 *Ala.* 15; *Price v. State,* 8 *Gill (Md.)* 295; *Jackson v. Maxwell,* 5 *Rand. (Va.)* 636; *Arnold v. Shields,* 5 *Dana (Ky.)* 18, 30 *Am. Dec.* 669; *Ex parte Davis,* 41 *Me.* 57; *Burch v. Hardwicke,* 23 *Grat. (Va.)* 51; *Brazie v. Fayette County,* 25 *W. Va.* 213, 216; *Connecticut River Co. v. County Coms.,* 127 *Mass.* 50, 58, 59, 34 *Am. Rep.* 338.

The writ will issue in cases of excess or absence of jurisdiction. 16 *Ency. Pl. & Prac.* 1095, 1110; 8 *Bacon's Abridg.* 206.

The writ will issue to keep an inferior court within the limits of its jurisdiction (*Clendaniel v. Conrad et al.,* 3 *Boyce,* 549, 598, 83 *Atl.* 1036, *Ann. Cas.* 1915*B,* 968)*;* or in case of abuse or usurpation by án inferior tribunal (32 *Cyc.* 604); or when jurisdiction depends upon a void act (16 *Ency. of Pl. & Prac.* 1122).

The writ will issue to judicial *quasi* judicial and even ministerial bodies, invested with limited judicial powers (16 *Ency. Pl. & Prac.* 1104, 1106; 32 *Cyc.* 601), although technically not a court (*High Ex. Leg. Rem.* § 781; *State v. Young,* 29 *Minn.* 474, 9 *N. W.* 737). The writ will issue to such bodies to prohibit an excess of authority, or of an authority which they do not possess. *Speed v. Comm. Council,* 98 *Mich.* 360, 364, 57 *N. W.* 406, 22 *L. R. A.* 842, 39 *Am. St. Rep.* 555.

The writ is not confined strictly to inferior judicial tribunals; on the contrary, it has been extended to other public functionaries, officials and persons, charged with the performance of a duty not wholly judicial. *State v. Stackhouse,* 14 *S. C.* 417.

The scope and use of the writ is shown in the following cases: *State v. Clen Dening,* 93 *Ohio St.* 264, 112 *N. E.* 1029; *Baker v. Gooding County,* 25 *Idaho,* 506, 138 *Pac.* 342; *Brazie v. Comms.,* 25 *W. Va.* 213; *Fleming v. County Commissioners, 31 W. Va.* 608, 8 *S. E.* 267; *Speed v. Com. Council,* 98 *Mich.* 360, 57 *N. W.* 406, 22 *L. R. A.* 842, 39 *Am. St. Rep.* 555; *Ex parte James B.*

*Richardson*, 1 *Harp.* (*S. C.*) 308, 311; *Prairie Oil & Gas Co. v. Cruce*, 45 *Okl.* 774, 147 *Pac.* 152; *Vermont Railroad Co. v. County Coms.*, 102 *Mass.* 310; *Day v. Alderman Springfield*, 102 *Mass.* 310; *People v. Amsterdam*, 90 *Hun.* 495, 36 *N. Y. Supp.* 64; *St. Louis & S. F. Ry. Co. v. Love*, 29 *Okl.* 523, 118 *Pac.* 259; *Los Angeles v. Superior Ct.*, 93 *Cal.* 380, 28 *Pac.* 1062; *Murtagh v. Sullivan*, 74 *Misc. Rep.* 517, 132 *N. Y. Supp.* 503; *State ex rel. Cain v. Toomey et al.*, 27 *S. D.* 37, 129 *N. W.* 563, *Ann. Cas.* 1913D, 324; 41 *New Brunswick*, 395; *People ex rel. Metz. v. Dayton*, 120 *App. Div.* 814, 105 *N. Y. Supp.* 809; *Sweet v. Hulbert*, 51 *Barb.* (*N. Y.*) 312; *Conn. River Co. v. County Commiss.*, 127 *Mass.* 50, 34 *Am. Rep.* 338.

The object of the writ being to restrain subordinate judicial tribunals of every kind from exceeding their jurisdiction, its use in all proper cases should be upheld and encouraged. *High on Ex. Leg. Rem.* § 762 (*3d Ed,*).

It is conceded that there may be other remedies to test the constitutionality of the act, but there is no other immediate adequate remedy to prohibit the respondents as possible *de facto* officers from incurring large expense incident to the registration of voters and the election, which the petitioners under the act are required to pay.

Return to the rule filed.

After arguments on the preliminary motion, to dismiss the petition, and before decision thereon, the court permitted counsel for the respondents to file return to the rule, in which it was averred:

"* * * and having heard the petition for a writ of prohibition read do complain that under color of the premises in the said petition contained, they are greatly vexed and disquieted, and this by no means justly, because protesting that the said petition and the matters therein contained are by no means sufficient in the law, and that they need not nor are obliged by law to answer thereto, yet for plea in this behalf they say under and by virtue of the power reposed in him by *Chapter* 111, *Volume* 29, *Laws of Delaware*, the Governor of the State of Delaware did appoint and commission these defendants, who were then and are now residents of the City of Wilmington to be members of the Department of Elections for the City of Wilmington for holding the special election in said chapter authorized, and that these defendants are by virtue of the provisions of the laws of the State of Delaware, and their appointment and commission as aforesaid, now and since the twenty-ninth day of

June, 1917, have been members of the Department of Elections for the City of Wilmington, and as such of right hold, use and exercise the office of members of said department, among the rights and duties of which office are the doing of all the various acts and discharging the duties and functions incumbent upon them as a legally created department of elections under said act, among the rights and duties of which office is the right to appoint persons to serve as registration officers in place of those mentioned in said petition, who have refused to serve; to administer the oath required by law to persons whom they have heretofore or may hereafter appoint as such registration officers, without this that these defendants held, used and exercised, and still do hold, use and exercise the office of members of the said department without legal right as in the said petition mentioned, all which matters and things these defendants are ready to verify, as the court shall award.   Wherefore," etc.

The petitioners moved to quash the return for reasons shown by the arguments following:

First.   The act in question is void because it embraces more than one subject not expressed in the title.   The title relates only to an election.   The act refers to an election, a complete new registration, and the creation of a new department of elections. *Equitable Guarantee & Trust Co. v. Donahoe*, 3 *Pennewill*, 191, 49 *Atl.* 401; *State v. Ferschke*, 2 *Boyce*, 477, 81 *Atl.* 401; *State v. Drexel*, 74 *Neb.* 776, 105 *N. W.* 174; *Ogden v. Cronan*, 171 *Ky.* 254, 188 *S. W.* 356; *Rouse v. Thompson*, 228 *Ill.* 522, 81 *N. E.* 1109; *Ritchie v. Richards*, 14 *Utah*, 345, 47 *Pac.* 670; *Spier v. Baker*, 120 *Cal.* 370, 52 *Pac.* 659, 41 *L. R. A.* 196.

In reply it was insisted that the subject embraced in the act is only one subject; that everything in the bill is germane to and grows out of the main purpose of the act, namely, an election to determine the will of the people in regard to whether the manufacture and sale of intoxicating liquor shall be licensed or prohibited within the two local option districts therein mentioned. *Clendaniel v. Conrad*, 3 *Boyce*, 549, 568, 83 *Atl.* 1036, *Ann. Cas.* 1915*B*, 968; *State v. Fountain*, 6 *Pennewill*, 520, 69 *Atl.* 926; *Monaghan v. Lewis*, 5 *Pennewill*, 218, 59 *Atl.* 948, 10 *Ann. Cas.* 1048.

The case of *Equitable Guarantee & Trust Co. v. Donahoe*, 3 *Pennewill*, 191, 49 *Atl.* 372, does not support the contention of the petitioners, neither does the case of *State v. Ferschke*, 2 *Boyce*, 477, 81 *Atl.* 401.   The title of the act under consideration is very similar to that of the act of 1907 which was held to be constitu-

tional. The two acts are very similar. The latter act provides that the registration and election officers of the prior election should conduct the new election; while the act before the court provides that the Governor shall name new registration officers to conduct the registration and election in rural New Castle County and a special department of elections for the City of Wilmington which shall appoint new registration officers for the purpose of conducting the registration and election in the City of Wilmington. This simple change in the method of conducting the registration and election does not distinguish this case from the *Fountain Case*.

The decisions on the question in other jurisdictions are all in accord with the law as laid down in *Clendaniel v. Conrad et al.*, *supra*.

Second. It was further contended by counsel for the petitioners that the act is void, at least as to New Castle County, because it was passed after a request had been submitted to the Legislature by a majority of the electors of rural New Castle County asking for a submission of the question of license or no license to the voters of New Castle County.

When a request is submitted to the Legislature in accordance with *Section* 1 of *Article XIII* of the *Constitution*, it cannot be withdrawn. Once the request is introduced, it becomes the mandatory duty of the Legislature to obey the Constitution and pass the law. *State v. Fountain*, 6 *Pennewill*, 520, 69 *Atl.* 926.

The Legislature is in duty bound to perform all duties imposed upon it by the Constitution, but if it fails to do so, and neglects or refuses to pass legislation as required by a mandatory constitutional provision, there is no remedy. *State v. Fountain*, *supra;* 8 *Cyc.* 762.

Conceding that such a request, once filed, cannot be withdrawn, it then follows naturally and conclusively, if, after the request is once presented, a law is passed by the Legislature covering the district set out in the request, that such law was passed pursuant to, and in obedience to, the constitutional mandate, and that the General Assembly in passing the law "acted upon the request." A request for rural New Castle County had been introduced in the Legislature on the last day of legislative session

and an act was passed applying to rural New Castle County and Wilmington.

The General Assembly acted upon the request, and this being so, and the act having fixed the day of election as of a day other than the day of the general election, the act is void.  *State v. Fountain, supra.*

The petition for withdrawal of the request and the language used therein, the time of the passage of the act and the withdrawal and the admission of the facts set up in the petition by the motion to discharge the rule and dismiss the petition, make this case identical in all respects with the Kent County case of 1905,* and brings the same within the opinion given by the Chancellor and Judges at that time, and also within the decision of the court in *State v. Fountain*, thus showing that the act is unconstitutional as to New Castle County.

The resolution asking for the withdrawal of said request is as follows:

"Whereas, there has been filed in the temperance committee of this body a petition requesting an election on the resubmission of the question of local option at the next General Election; and whereas, House Bill No. 165, providing for the resubmission on the local option question in New Castle County and the City of Wilmington has passed the House and Senate of Delaware, and there is no necessity for the petition aforeraid: Therefore, your petitioners whose names appear on said petition hereby request that their names be stricken therefrom, and that House Bill be stricken from the calendar."

The withdrawal, or attempted withdrawal, of the request from the Legislature, was and is a nullity.  *Koerber v. Ionia Co. Supervisors*, 155 *Mich*. 677, 120 *N. W*. 8; *Rutledge v. Marquette Co. Supervisors*, 160 *Mich*. 22, 124 *N. W*. 945; *Kern. v. Board of Supervisors St. Clair Co.*, 160 *Mich*. 11, 124 *N. W*. 941; *State v. Webb*, 49 *Mo. App*. 407; *Keeling v. Township of Brant*, 20 *Ont. W. R*. 551; 25 *Ont. Law Rep*. 181; *Bordwell v. Dills*, 70 *Ark*. 175, 66 *S. W*. 646; *Clark et al. v. Daniel et al.*, 77 *Ark*. 122, 91 *S. W*. 9; *State v. Phillipsburg*, 68 *N. J. Law*, 552, 53 *Atl*. 620; *Orcutt v. Reingardt*, 46 *N. J. Law*, 337 (liquor license); *Grinnell v. Adams*,

---

*An unpublished opinion to the Governor as to constitutionality of a certain act.  See 6 *Pennewill*, 520, 69 *Atl*. 931.

34 *Ohio St.* 44 (laying out or altering road); *Loomis v. Bailey*, 45 *Iowa*, 400 (county seat); *Jamison v. Bd. Supervisors Louisa County*, 47 *Iowa*, 388 (county seat); *Seibert v. Lovell*, 92 *Iowa*, 507, 61 *N. W.* 197 (drainage district); *Willing v. Rye*, 123 *Iowa*, 471, 99 *N. W.* 158 (county seat); *Jersey City Brewing Co. v. Jersey City*, 42 *N. J. Law*, 575 (improvements); *Vanderbeck v. Jersey City*, 44 *N. J. Law*, 626 (improvements); *Flemington Borough Walker's Appeal*, 168 *Pa.* 628, 32 *Atl.* 86 (incorporate borough); *Armstrong v. Ogden City*, 12 *Utah*, 476, 43 *Pac.* 119 (improvements); *Sutherland v. McKinney*, 146 *Ind.* 611, 45 *N. E.* 1048 (remonstrance against intoxicating liquor).

It was urged for the respondents in reply that the authorities relied on are inapplicable to the case at bar.

It is not certain that the point raised can ever be brought before the court for adjudication. Be that as it may, the court will not say that the act in question is unconstitutional on any such grounds.

The court has already decided this question adversely to the contention of the petitioners. *State v. Fountain, supra.*

It is clear from that case that the Legislature has ample authority to enact the law in question. The request presented to the Legislature now relied on did not in any way limit the right of the Legislature to enact the statute in question under the permissive clause of the Constitution. *Schulherr v. Bordeaux*, 64 *Miss.* 59, 8 *South.* 201; In *re State Census*, 6 *S. D.* 540, 62 *N. W.* 129.

Third. It was further contended for the petitioners: That the act makes no provision as to the method of choosing or appointing the committees to have charge of the campaign for, and against, license. That the act should have pointed out a way by which said committees were to be chosen. Not having done this, there are and can be no lawful committee for, or against license, and therefore any acts done by them are illegal acts. The failure to provide a method for the appointment of said committees is a case of *casus omissus*. *Ripley v. Gifford*, 11 *Iowa*, 367; *State ex rel. Board, etc.*, 175 *Ind.* 400, 94 *N. E.* 716; *State ex rel. Mickey v. Reneau*, 75 *Neb.* 1, 104 *N. W.* 1151, 106 *N. W.* 451; *Benton et al.*

*v. Wickwire*, 54 *N. Y.* 226; *State v. Eggers*, 36 *Nev.* 364, 136 *Pac.* 107; *Edmondson and wife v. Dyson*, 7 *Ga.* 512; *State v. Simon*, 20 *Or.* 365, 26 *Pac.* 170.

In reply it was urged for the respondents that it is a matter of common knowledge that there was and is a distinct alignment of the people in this state for and against license and that the respective parties maintain an organization representative of the forces of each class. It is not thought that the court will seriously regard this ground of objection.

Fourth. On the contention that there is a *casus omissus*, counsel for the petitioners pointed out that the statute makes specific provision for the appointment of registration officers for Wilmington, by the new department of elections, if no lists are presented to it; that the statute makes specific provision for the appointment of registration officers for the county by the Governor, if no lists are presented to him; but it was insisted that the statute makes no provision at all for the appointment of a department of elections by the Governor if no lists are presented to him.

And it was contended that the statute is inoperative and a nullity:

"When a statute makes specific provisions in regard to several enumerated cases or objects, but omits to make any provision for a case or object which is analogous to those enumerated, or which stands upon the same reason, and is therefore, within the general scope of the statute, and it appears that such case or object was omitted by inadvertence or because it was overlooked or unforseen, it is called a *casus omissus*. Such omissions or defects cannot be supplied by the courts." *Black on Interp. of Laws*, 80.

"No case can be found to authorize any court to alter a word so as to produce a *casus omissus*." Lord Halsbury in *Mersey Docks Case*, 13 *App. Cas.* 602.

"A *casus omissus* can in no case be supplied by a court of law, for that would be to make laws." *Butler, J.*, in *Jones v. Smart*, 1 *Term Rep.* 44.

"When a provision is left out of a statute, either by design or mistake of the Legislature, the courts have no power to supply it. To do so would be to legislate and not to construe." Mr. Justice Woods in *Hobbs v. McLean*, 117 *U. S.* 567, 6 *Sup. Ct.* 870, 29 *L. Ed.* 940.

"Where a statute is incomplete or defective, whether as a result of inadvertence or because the case in question was not forseen or contemplated, it is beyond the province of the courts to supply omissions, even though, as a result, the statute is a nullity," 39 *Cyc.* 1113.

"The authorities on this subject are numerous and unanimous." *Hardcastle on Stat. Law*, 82 (3d Ed.); *Endlich on Interpret. Stats.* § 22; *Wilberforce*

*on Statute Law*, 24; 2 *Lewis' Suth. on Stat. Cons.* § 606; *Sedg. on Stat. and Con. Law*, 231; *Smith's Com. on Stat. Con.* § 714; 39 *Cyc.* 1113; *Ripley v. Gifford*, 11 *Iowa*, 367; *State ex rel. v. Board, etc.*, 175 *Ind.* 400, 94 *N. E.* 716; *Kunkalman v. Gibson*, 171 *Ind.* 503, 84 *N. E.* 985, 86 *N. E.* 850; *State ex rel. Mickey v. Reneau*, 75 *Neb.* 1, 104 *N. W.* 1151, 106 *N. W.* 451; *Arnold v. State (Okl. Cr. App.)* 132 *Pac.* 1123; *Benton et al. v. Wickwire*, 54 *N. Y.* 226; *Inhabitants of Eden v. Flora Pineo*, 108 *Me.* 73, 78 *Atl.* 1126, *Ann. Cas.* 1913A, 1340; *McKuskie v. Hendrickson*, 128 *N. Y.* 555, 28 *N. E.* 650; *State v. Eggers*, 36 *Nev.* 364, 136 *Pac.* 107; *Pittsburgh v. Kalchthaler*, 114 *Pa.* 547, 7 *Atl.* 921; *Swift v. Luce*, 27 *Me.* 285; *Wabash R. Co. v. United States*, 178 *Fed.* 5, 101 *C. C. A.* 133, 21 *Ann. Cas.* 819; *Smith v. Rines*, 2 *Sumn.* 338, *Fed. Cas. No.* 13,100; *McCluskey v. Cromwell*, 11 *N. Y.* 593; *Edmondson and wife v. Dyson*, 7 *Ga.* 512; *Springside Coal Min. Co. v. Grogan*, 53 *Ill. App.* 60; *Steere v. Brownell*, 124 *Ill.* 27, 15 *N. E.* 26; *Woodbury & Co. v. Berry*, 18 *Ohio St.* 456; *State v. Simon*, 20 *Or.* 365, 26 *Pac.* 170; *Speed v. Common Council*, 98 *Mich.* 360, 57 *N. W.* 406, 22 *L. R. A.* 842, 39 *Am. St. Rep.* 555.

Counsel for the respondents insisted, in reply, that the proviso at the end of *paragraph* 2, *Section* 2, of the statute applies and has reference not only to appointments of registration officers in rural New Castle County but equally to appointments of members of the Department of Elections for the City of Wilmington in the event lists of names were not furnished the Governor by the respective committees.

That it can hardly be thought that it was intended by the Legislature that an omission to furnish lists by the committees, either through ignorance, inadvertence, intentional neglect or intent to attempt to veto the election by such method, should have the effect of defeating the election provided for. *State v. Dept. of Elections*, 5 *Boyce*, 215, 91 *Atl.* 993; *Commonwealth v. Plaisted*, 148 *Mass.* 375, 19 *N. E.* 224, 2 *L. R. A.* 142, 12 *Am. St. Rep.* 566; *Bond v. Mayor of Baltimore*, 118 *Md.* 159, 84 *Atl.* 258; *Rogers v. City of Buffalo*, 123 *N. Y.* 173, 25 *N. E.* 274, 9 *L. R. A.* 579; *People v. Hoffman*, 116 *Ill.* 587, 5 *N. E.* 596, 8 *N. E.* 788, 56 *Am. Rep.* 793; *Gomez v. Timon*, 60 *Tex. Civ. App.* 311, 128 *S. W.* 656, 657; *Ex parte St. Hilaire*, 101 *Me.* 522, 64 *Atl.* 882, 8 *Ann. Cas.* 385; *Hubert v. Lumber Co.*, 191 *U. S.* 70, 24 *Sup. Ct.* 28, 48 *L. Ed.* 101; *Appeal of Spencer*, 78 *Conn.* 301, 61 *Atl.* 1010; *People v. Cook*, 14 *Barb. (N. Y.)* 259, 289 *et seq.*; *People v. Supervisors of Ulster Co.*, 34 *N. Y.* 268-272; *Fidelity Trust Co. v. Mayor, etc.*, 96 *Ky.* 564, 29 *S. W.* 442; *Smith v. Skagit Co. (C. C.)* 45 *Fed.* 726.

The proviso is applicable to the entire act, and it applies as

well to a failure to submit names for the appointment of members of the department of elections as to a failure to submit names for the appointment of registrars in rural New Castle County.

The proviso in question, if in a separate paragraph by itself, would apply equally and alike to the appointment both of registrars and members of the department of elections. It is an unreasonable view to take of the statute that the Governor has the right, in any event, to appoint registrars for rural New Castle County, but not members of the department of elections for the City of Wilmington; and that the Legislature intended that the committees for or against license, by their failure to submit lists to the Governor, should have the power to veto the holding of an election i n the City of Wilmington.

A statute must be construed, if possible, so as to give it force and effect. *Young v. Regents of University*, 87 *Kan.* 239, 124 *Pac.* 150, *Ann. Cas.* 1913*D*, 701; *Atty. Gen. v. Plank Road Co.*, 2 *Mich.* 138; *Kitchen v. So. Ry. Co.*, 68 *S. C.* 554, 48 *S. E.* 4, 1 *Ann. Cas.* 747; *Mechanics' & F. Bank's Appeal*, 31 *Conn.* 63; *United States v. Babbit*, 1 *Black*, 55, 17 *L. Ed.* 94; *Cumberland v. Magruder*, 34 *Md.* 381; *Atty. Gen. v. Detroit, etc.*, 2 *Mich.* 138.

The proviso under consideration is not limited in its effect to the section where it is found, but is an independent proposition, which applies to all the officers to be appointed by the Governor under *Section* 2.

The court ought not to create a *casus omissus* by interpretation, save in some cases of strong necessity. *Young v. Regents of University*, 87 *Kan.* 239, 124 *Pac.* 150, *Ann. Cas.* 1913*D*, 701; *State of Missouri ex rel. Crow v. City of St. Louis*, 174 *Mo.* 125, 73 *S. W.* 623, 61 *L. R. A.* 593.

The Governor had express statutory authority to make the appointments in question, in the event lists of names were not furnished to him by the committees.

*Paragraph* 1, § 2, *c*, 111, 29 *Laws of Delaware*, providing for the special election in question is as follows:

"For the special election provided for in *Section* 1 of this act, a new and complete registration of voters shall be made, and all the provisions in relation

to registration of voters, as set forth in *Chapters* 56 and 57 of the *Revised Statutes* of the State of Delaware, shall apply to the registration of voters under this act, so far as applicable, except as hereinafter provided."

The fifth paragraph is as follows:

"This committee so appointed shall be known as the Department of Elections for the City of Wilmington herein provided for and shall perform all the duties in relation to said election, and in relation to the registration therefor, shall have all the power and authority and shall be subject to all the duties and obligations so far as said election is concerned now devolving upon the department of elections of the City of Wilmington under the provisions of *Chapter* 57 of the *Revised Statutes* of the State of Delaware."

And the eighth paragraph is as follows:

"Wherever the terms 'political parties' and 'political faith' occur in *Chapters* 56 and 57 of the *Revised Statutes* of the State of Delaware as applied to special election herein provided, said term shall be interpreted to mean the party for license and the party against license."

It, therefore, clearly appears that the Legislature not only intended to incorporate, for the use of said election, the machinery provided for by the act, but by express provisions in the act included as well as far as applicable the machinery provided for by *Chapters* 56 and 57, *Rev. Code* 1915.

*Section* 2, *c.* 57 (*Rev. Code* 1915, § 1659), provides that:

"When any vacancy occurs in said department by or from any cause whatsoever, the Governor aforesaid shall fill the unexpired term by appointment, but at no time shall all the members of said department be of the same political faith and opinion."

PENNEWILL, C. J., delivering the opinion of the court:

The following questions of law were argued:

First, whether the Superior Court had power to issue a writ of prohibition in this case.

Second, whether the act in question is unconstitutional because it contains subjects not expressed in the title.

Third, whether the act is unconstitutional so far as it relates to New Castle County outside of Wilmington, because it provides that the vote shall be taken on a day other than that of the general election.

Fourth, whether the person who furnished lists from which the Governor appointed the registration officers in the district outside of Wilmington, and the Department of Elections in the City of Wilmington, were committees within the meaning of the statute.

Fifth, whether the act is inoperative in the City of Wilmington because it does not provide that the Governor shall select and appoint the members of the department of elections in case the committees fail to furnish lists of names from which the appointments shall be made.

[1]   The respondents deny the power of the Superior Court "to issue a writ of prohibition in any event under the Constitution of this state," and especially in this case.

It is hardly worth while to question the inherent power of said court to issue a writ of prohibition because its right to issue a writ of *certiorari* was fully considered and sustained in the case of *Rash v. Allen*, 1 *Boyce*, 444, 76 *Atl.* 370, and all·that was said in that case respecting the writ of *certiorari* applies with equal force to the writ of prohibition.   They were both common-law writs, issuable out of the Court of King's Bench, and the authority of our Superior Court to issue the same writs is not open to argument in view of our statutory and constitutional provisions.

The respondents seem to question the power of the Superior Court to issue a writ of prohibition because under our present Constitution that power is given to the Supreme Court.   The power was likewise given to that court to issue writs of *certiorari*. The right to issue writs of prohibition was given to the Supreme Court because that tribunal alone could review the proceedings and correct the errors of Superior Courts.   A writ of prohibition could issue from a Superior Court only to inferior courts and tribunals, and it was deemed important and necessary by the constitutional convention that the writ should also issue to other courts of equal grade with the Superior Court.   Naturally and properly that power was conferred upon the highest court as a part of its appellate jurisdiction.   It was not one of its inherent powers, not being a common-law court, and the power therefore

had to be specially conferred. But giving the power to the Supreme Court did not take away from the Superior Court its common-law right to issue the writ.

It is insisted with greater confidence that the writ of prohibition could not issue in the present case because the tribunal to which it was directed was not required to perform judicial functions or duties. It seems to be held by the great weight of authority that the writ can issue only against inferior courts and tribunals whose duties are judicial, or, as some courts say, *quasi* judicial. It is, however, unnecessary in this case to decide whether the duties required to be performed by the Department of Elections for the City of Wilmington are judicial or ministerial.

[2, 3] It is contended by the petitioners that the persons claiming to constitute the department of elections are an illegal body, because the law under which they were appointed is unconstitutional and void. We think the writ of prohibition can always issue to prevent the performance of a public act by a public body or tribunal, acting under color of law, that has in fact no legal existence, provided there is no other immediate and adequate remedy. *State of Wis. ex rel. Fourth Nat. Bk. of Phila. et al. v. D. H. Johnson et al.*, 51 *L. R. A.* 33 (note). The Superior Court of this state has the undoubted right to issue an appropriate writ for that purpose, and the writ of prohibition is, we think, such a writ. And in such case the question is not whether the act sought to be prevented is judicial or ministerial. It is rather whether the body undertaking to perform the act is a legal body or not. It goes more to the validity of the office than to the character of the act. It is generally held by courts, as well as text-writers, that the use of the writ in all proper cases should be upheld and encouraged.

It is conceded that the individuals claiming to constitute the department of elections may be *de facto* officers, and, therefore, able to contract bills that the petitioners will be compelled to pay. It is for that reason that the petitioners claim the right to the issuance of the writ, and that they have no other adequate remedy.

It is claimed by the petitioners that the act in question is

unconstitutional because it contains subjects not expressed in the title.    The title of the act is as follows:

"An act providing for the submission to the vote of the qualified electors of the City of Wilmington as one district, and to the qualified electors of the remaining part of New Castle County as one district, as mentioned in *Section 2, Article XIII,* of the Constitution of the State of Delaware, the question whether the manufacture and sale of intoxicating liquors shall be licensed or prohibited within the limits of the said two districts in accordance with said *Article XIII* of said Constitution and fixing penalties for the illegal manufacture and sale of intoxicating liquors in either of said districts wherein there shall be a majority of votes cast against license."

It is unnecessary to consider any cases cited from other jurisdictions because the language and reasoning of the courts in certain Delaware cases is broad enough we think to cover the present one.

The Constitution provides that:

"No bill or joint resolution, except bills appropriating money for public purposes, shall embrace more than one subject, which shall be expressed in its title."    *Article 2,* § 16.

[4]    The courts of the country are practically unanimous in holding that such a provision should be construed liberally, and that if the matters claimed to constitute two subjects are not separate and distinct subjects, but are connected with each other and germane to the primary objects of the statute the act containing them is not invalid, as being violative of such provision. *State v. Fountain,* 6 *Pennewill,* 541, 69 *Atl.* 926; *Cooley (7th Ed.)* 209.

In *Monaghan v. Lewis,* 5 *Pennewill,* 218, 59 *Atl.* 948, 10 *Ann. Cas.* 1048, Judge Spruance in delivering the opinion of the court said:

"The object of this important provision of the Constitution is to prevent the joining in one act of several incongruous matters, and to prevent deception by provisions of which the title gives no intimation.    While such construction should be given to this provision as will prevent the evils it was intended to remedy, it should not be so construed as to defeat or embarrass legislation where there has been a substantial compliance with its requirements. Where it is possible, it should be so construed as to uphold rather than destroy legislation.    If all parts of an act relate directly or indirectly to the general subject of the act it is not open to the objection of plurality."

Opinion.

In *Clendaniel v. Conrad et al.*, 3 *Boyce*, 549, 568, 83 *Atl.* 1036, 1041 (*Ann. Cas.* 1915*B*, 968), the court held that:

"The generality of a title is no objection to it, so long as it is not made a cover to legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary or proper connection."

Applying these principles to the act before us, can it be said it is invalid because the title is violative of the above mentioned constitutional provision? It is claimed that the subjects not embraced in the title are: The appointment of registration officers in the county outside of Wilmington, and of a Department of Elections for the City of Wilmington.

[5] The general subject of the act as expressed in the title is the holding if a special election in the City of Wilmington, and in that part of New Castle County outside of Wilmington, at a certain time, to determine whether the manufacture and sale of intoxicating liquors shall be licensed or prohibited within said districts; at which election the question was to be submitted to a vote of the qualified electors of said districts. There could not be an election, and the electors would not be qualified to vote at the election, unless they had been registered as provided by the act.

The appointment of registration officers was not only germane to the general subject of the statute, and naturally connected, but it was essential to the holding of the election, and necessarily connected therewith. Certainly it was not incongruous. The same observation may be made respecting the creation of a department of elections whose duties were the appointment of registration officers and the doing of other things necessary to the holding of the election in Wilmington. Neither the members of the Legislature, nor the general public could be deceived, respecting the subjects contained in the act, by the generality of its title.

Any one at all conversant with elections would assume that an act which provided for such an election would also provide in some way for the registration of the voters and for other things essential to the holding of the election.

We are unable to see any difference in principle between this act and the act of 1907 so far as the present question is concerned.

It is true that the former act did not provide for new registration officers, except to fill vacancies, or for a new department of elections in Wilmington, but it did provide for a supplemental registration of qualified voters by the old officers, and for the performance by the old department of elections of such things as were necessary to the holding of an election. The new act creates new officers and the former act adopted the old ones, but both provided for a registration and the machinery to accomplish it, either by creation or adoption—the registration and machinery being practically the same in both acts. And the registration officers and department of elections created by the new act are special and not general. They are appointed to do the things necessary for the holding of the election provided for in the act, and for no other purpose. Their powers and duties are confined to such election, and their offices cannot extend beyond it.

The court are of the opinion that the act in question is not unconstitutional because of its title.

[6-8] The petitioners also contend that because a majority of the members from the local option district outside of Wilmington had requested a submission of the question whether the manufacture and sale of intoxicating liquors in that district should be prohibited, the Legislature was bound to submit the question under the mandatory provision of the Constitution (*Article* 13, § 1), and could not submit the question under another provision that is permissive only. The two provisions are as follows:

"Section 1. The General Assembly may from time to time provide by law for the submission to the vote of the qualified electors of the several districts of the state, or any of them, mentioned in *Section* 2 of this Article, the question whether the manufacture and sale of intoxicating liquors shall be licensed or prohibited within the limits thereof. * * * Whenever a majority of all the members elected to each house of the General Assembly by the qualified electors in any district named in *Section* 2 of this Article shall request the submission of the question of license or no license to a vote of the qualified electors in said district, the General Assembly shall provide for the

submission of such question to the qualified electors in such district at the next general election thereafter."

The Legislature, therefore, could provide for an election in one or more of the local option districts of the state in either of two ways, viz: Upon request or without request. Upon request being made, as provided by the Constitution, it was unquestionably the duty of the Legislature to provide for an election in that district, under the mandatory clause, as was said by this court in the *Fountain Case*. But the court has no power to compel the Legislature to do something they should have done and failed to do.

We are asked to compel the Legislature to act under one provision by denying them the right to act upon the other. This the court are unable to do.

The Legislature is a co-ordinate and independent branch or department of the state government and its members are responsible to the people and not to the court for any disregard or failure of duty. They had the power, as already said, to provide for an election under either the mandatory or permissive provision of the Constitution.

The court in the *Fountain Case* said:

"The result of the discussion of the local option question in the convention was the embodiment of the two distinct ideas in *Section* 1 of *Article* 13, and each idea remained as complete, clear and definite as it was originally intended. Throughout the debates it was clearly the purpose of some of the members to make it mandatory on the Legislature to submit the question upon request, and to make such request effective, the time of such submission was also provided for, to wit, at the next general election. It is just as manifest that it was the purpose of other members to make the submission of the question discretionary with the Legislature, and accordingly the time when the vote should be taken was made discretionary also. It might be either at a general or special election. Such being the attitude of the members, with no disposition on the part of either side to yield, both provisions contended for were incorporated in *Article* 13. Each one, however, was complete in itself, independent of the other, and to become operative as conditions might require. or seem to the Legislature to warrant."

The entire independence of the two provisions has, therefore, been decided in this state, and by no reasonable construction can the *Fountain Case* be made an authority supporting the con-

tention of the petitioners. The following words from the opinion in that case:

"If, however, at any time a majority of the members of each house from any district shall request such submission, the Legislature must comply with such request."

—were claimed at the argument to indicate that when a request was presented the Legislature was compelled to act upon the mandatory provision, and if it did not so act, it had no power to act upon the permissive provision. The opinion of the court does not admit of any such construction, because the words referred to mean nothing more than we have said in the present opinion, viz.: That when a request is presented it is the duty of the Legislature to act upon the mandatory clause, and if they act upon such clause the election must be held at the general election.

The court did not say that if the Legislature failed for any reason to regard the request it had not the power to act upon the permissive clause of the Constitution.

While, as we have said, it is the duty of the Legislature to proceed upon the mandatory provision when a request is presented, we can conceive that the members might prefer that the election should be held at an earlier date than the next general election, and finding that the two provisions are identical, except in the time for holding the election, conclude to disregard the request and pass the act under the permissive provision.

It is conceded that if no request had been presented the act as passed would be entirely constitutional, but it is contended that because a request was presented, which was wholly disregarded by the Legislature, the act is unconstitutional.

We are not at all impressed with the soundness of this argument.

[9] The request that was presented is material in this case only so far as it may show upon which provision the Legislature acted in passing the statute. Was the submission made upon the request or without regard to it? If upon the request, then the vote had to be taken at the general election.

The fact that the act provides for a vote at a special election to be held at a time other than the general election is one indication that the Legislature did not act upon the request; but a matter of greater significance is the fact that a resolution was adopted by one branch of the Legislature which recited that the election had been provided for independently of the request, and directed that the request should, therefore, be withdrawn. Another fact indicating that the request was not considered in passing the act is that the Legislature wanted to provide in one act for·an election in two districts, in only one of which a request had been presented.

The court are of the opinion that the Legislature, not desiring to confine the election to the local option district outside of the local option district embracing the City of Wilmington, but to provide for an election in both districts, acted under the permissive and not the mandatory provision, and had the right, therefore, to provide for an election· to be held at a time other than the general election.

Counsel for the petitioners insist that under this construction of the Constitution a Legislature may sometime provide for two elections in the same district at practically the same time. We will not assume that such an unreasonable thing will be done.

[10] Much was said at the argument about the power of the Legislature to withdraw, or permit the withdrawal of, a request for submission, but we are unable to see how such question can be in any way material to this case. It is admitted that if the request was withdrawn it was not done until after the act was passed; but so far as the power of the Legislature to pass the act is concerned, it made no difference whether the request was withdrawn or not. While the right to withdraw such a request is in our judgment immaterial to the present case, the court think it proper to say they are clearly of the opinion that it cannot be withdrawn after it has been presented to and received by the Legislature, either by the members signing it, or by resolution of the Legislature.

[11] It is further claimed by the petitioners that the act

having made no provision for the choosing or appointing of the committees to have charge of the campaign for and against license, there could be no lawful committees, and, therefore, any acts done by persons claiming to constitute such committees are void.

In respect to this contention, which perhaps was not seriously made or much relied upon, it is only necessary to say that for many years there have been in this state parties that were in favor of license and parties that were against license. They have existed certainly since the first local option campaign, and have been more or less active ever since. The Legislature, might very well assume that such parties would be organized and active in such an election as was provided for, and have committees that would submit lists of names to the Governor as contemplated by the act. Lists were submitted by committees claiming to represent both parties, in the district of New Castle County outside of Wilmington, and by a committee claiming to represent the party against license in Wilmington. There is nothing to indicate that such committees were not authorized to represent the parties for whom they claimed to act, and the court will, therefore, assume that they were regularly appointed, or at least represented the respective parties for which they professed to act. In the opinion of the court the appointments made from lists furnished by such committees were legal appointments.

The state and county committees of the two principal political parties were not expressly recognized by the law until comparatively recent years, but they have existed nevertheless for a long time, and been generally recognized as representative of their respective organizations.

We come now to a consideration of the last and most difficult question raised in the case, viz.: Is there a *casus omissus* in the statute, an omission that makes the law inoperative in the district comprising the City of Wilmington?

The petitioners insist, and apparently with much confidence, that she Governor had no authority to appoint members of the department of elections for Wilmington except from lists of names

furnished by the committees mentioned in the act; that because the committee in favor of license in said city failed to furnish any list the appointment of James H. Kane and Timothy J. Mooney was void.

In order that the question now under consideration may be clearly understood, it is necessary to quote the second, third and fourth paragraphs of the second section of the statute.  They are as follows:

"The Governor some time in the month of June in the year one thousand nine hundred and seventeen shall appoint in each election district of that part of New Castle County outside of the corporate limits of the City of Wilmington, three capable persons who shall be voters and residents in the election district for which they shall be appointed, and who shall be the registration officers of the election district for which they are appointed; one of whom shall be registrar, and the other two assistant registrars.    The persons so appointed shall be selected by the Governor from names submitted to him by the committee having charge of the campaign against license, and from the names submitted to him by the committee having charge of the campaign for license, and shall be divided as nearly as possible equally between the lists submitted for each representative district.    For each appointment accredited to the committee having charge of the campaign against license, and for each appointment accredited to the committee having charge of the campaign for license, the respective committee shall furnish the Governor, on or before the first day of June in the year one thousand nine hundred and seventeen, a list of three names of properly qualified persons, from which list the Governor shall make his appointment: Provided, however, that if the said lists of names are not furnished as aforesaid, then and in that event the Governor shall appoint suitable persons having the qualifications provided for by this section.

"It shall be the duty of the Governor, when appointing registration officers, as hereinbefore provided, to appoint at the same time in each of said districts one other capable person, qualified as aforesaid, who shall be alternate registrar for the said election district; and the registration officers so appointed shall have all the powers and authority and shall be subject to all the duties and obligations, as now provided in relation to registration officers for the general election, and shall sit on the days of the several months in the year one thousand nine hundred and seventeen, as now provided for sittings for registration in the year of a general election.

"The Governor shall, also, sometime in the month of June aforesaid appoint five suitable persons of the City of Wilmington for the purpose of conducting the election provided for in this act.    The said persons so appointed shall be selected from a list of names, submitted by the committee having charge of the campaign against license, and from a list of names submitted by the committee having charge of the campaign for license, and not more than three of said persons shall be appointed from either of said lists."

It will be observed that at the end of the second paragraph of the section occur the words:

"Provided, however, that if the said lists of names are not furnished as aforesaid, then and in that event the Governor shall appoint suitable persons having the qualifications provided by this section."

It will be also observed that after providing in the fourth paragraph for the appointment by the Governor of a Department of Elections for the City of Wilmington, the statute at that place makes no provision for appointments in the event that no lists of names are presented by the committees.

This omission it is claimed, makes what is known in the law as a "*casus omissus*," which, the authorities agree, cannot be supplied by the court.

[12] It is unquestionably the law that when there is clearly a *casus omissus* in a statute, the courts are powerless to supply it, "for that would be to make law." "While the courts may interpret doubtful or obscure phrases and obscure language in a statute, so as to give effect to the presumed intention of the Legislature, and to carry out what appears to be the general policy of the law, they cannot, by construction, cure a *casus omissus*, however just and desirable it may be to supply the omitted provision." 2 *Suth. on Stat. Const.* 606 (431).

[13] While there can be no doubt about the effect of a *casus omissus*, and the inability of the courts to cure or supply the omission, it should be very clear that there is such a defect before the law is declared to be inoperative on that ground.

In *Young v. Regents of University*, 87 *Kan.* 239, 124 *Pac.* 150, *Ann. Cas.* 1913D, 701, the court said:

"We ought not to create a *casus omissus* by interpretation save in some case of strong necessity. * * * Whenever the case is clearly within the mischief, the words must be read so as to cover the case if by any reasonable construction they can be so read, * * * though the words may point more exactly to another case; this must be done rather than make such a case a *casus omissus* under the statute. * * * There are two modes of reading an instrument; where the one destroys and the other preserves, it is the rule of law and of equity * * * that you should * * * lean towards that construction which preserves rather than towards that which destroys. * * * Where the language of a statute, in its ordinary meaning and grammatical construction, leads to a manifest contradiction of the apparent purpose of the enactment, or to some inconvenience or absurdity, hardship, or injustice, presumably not intended, a construction may be put

Opinion.

upon it which modifies the meaning of the words, and even the structure of the sentence,   *   *   *   or that alters the collocation of the words."

[14]   It is the duty of the court to discover and carry out the intention of the Legislature, if possible, by sustaining the act because that is the controlling consideration in determining its proper construction.   It is the duty of the court to give a statute such a construction as will render it constitutional and operative if it can be done without violence to the language of the statute. A statute reasonably susceptible of two constructions, one of which will render it void or inoperative and the other valid, must be construed so as to make it valid and operative.   Where the words of the statute are plainly expressive of an intent, not rendered dubious by the context the interpretation must conform to and carry out that intent.   It is a familiar principle that the Legislature intends to impart to its enactments such a meaning as will render them operative and effective, and to prevent persons from eluding or defeating them.   An interpretation must never be adopted which will defeat the purpose of the act if it will admit of any other reasonable construction.   *Black on Interp. of Laws*, 106.

It will be conceded that the following citation found in petitioner's brief is a correct statement of the law and applicable to the present case:

"When the law is clear and explicit, and its provisions are susceptible of but one interpretation, its consequences, if evil, can only be avoided by a change of the law itself, to be effected by legislation and not judicial action. Where a law is plain and unambiguous, whether it be expressed in general or limited terms, the Legislature should be intended to mean what they have plainly expressed, and consequently no room is left for construction." *Sedg. on Stat. and Const. Law*, 231.

It is argued by the petitioners that the Legislature intended that the proviso at the end of *Paragraph* 2 of *Section* 2 should apply only to the antecedent words because, (1) the proviso is unambiguous, complete and appropriately located; and (2) the act provides at the proper place, that in the event the committees fail to present lists of names for registration officers the Governor and department of elections should have power to appoint; and

if it was intended that the proviso in question should apply to the appointment of members of the department of elections, it would have been placed in the paragraph that authorized their appointment or subsequent thereto.

The respondents, with equal confidence, insist that the proviso "applies and has reference not alone to the paragraph of the section to which it is the concluding clause, but also to the paragraph having to do with the appointment of the department of elections."

It is the duty of the court to determine the extent, meaning and applicability of the proviso in question, and it will be of some assistance to bear in mind the general principles of statutory construction that have been already stated, as well as the rules we are about to state.

There is no doubt about the office of a proviso in a legislative enactment. And it is a well-recognized rule of construction that a proviso attached to a section or paragraph of a statute is ordinarily applicable to that section or paragraph only. But it is not to be supposed that this rule is absolute and inflexible.

The Oklahoma Supreme Court in the case of *Leader Printing Co. v. Nicholas*, 6 *Okl.* 309, 50 *Pac.* 1001, stated the rule to be in effect as follows: The safe rule to be adopted and which will admit of a broad and comprehensive construction of every statute, and place upon it that construction that will give effect to the true intention of the Legislature, * * * is that a proviso should be held to relate, not to the whole statute, or to the whole section, but only to the clause of which it is a part unless another purpose or intention on the part of the legislative body enacting it is deducible from the enactment.

The rule that a proviso in a law is ordinarily confined to the particular clause to which it is attached, arises from the presumption that the meaning of the law-makers is thereby reached, but it is not an arbitrary rule to be enforced at all events. To ascertain the intention of the law-makers is the purpose of all interpretation. *Friedman v. Sullivan*, 48 *Ark.* 213, 2 *S. W.* 786.

The rule respecting the construction of a proviso has been expressed in varying language but much to the same effect in different cases, as appears from the following quotations:

"The proviso will be held to apply to other sections where the context requires it, or where it is necessary to carry into effect the evident intention of the Legislature as it appears from the whole act."

"While the position of a proviso in a statute has a great and sometimes a controlling influence upon the extent of its application, it is not a hard and fast rule, and the inference from its position cannot overrule its plain general intent."

Mr. Justice Holmes in *United States v. Whitridge*, 197 *U. S.* 143, 25 *Sup. Ct.* 408,. 49 *L. Ed.* 696, said:

"While no doubt the grammatical and logical scope of a proviso is confined to the subject-matter of the principal clause, we cannot forget that in practice no such limit is observed."

See note to case of *Norfolk, etc., Traction Co. v. C. B. White & Bros.* and the many cases therein referred to. 30 *Ann. Cas.* 658; 36 *Cyc.* 1163, and cases cited; *State ex rel. v. Webber*, 96 *Minn.* 348, 105, *N. W.* 68; *United States v. Scruggs V. & B. Dry Goods Co.*, 156 *Fed.* 940, 84 *C. C. A.* 440.

In *State of Missouri ex rel. Crow v. City of St. Louis*, 174 *Mo.* 125, 73 *S. W.* 623, 61 *L. R. A.* 593, the court in the course of a very exhaustive opinion said, quoting with approval from *Suth . on Stat. Const.* 267:

"A proviso is construed to apply to the provision or clause last immediately preceding. But * * * this principle is of no great force. It is only operative when there is nothing in the statute indicating that a relative word or qualifying provision is intended to have a different effect. And very slight indication of legislative purpose, or a parity of reason, or the natural and common sense reading of the statute may overturn it, and give it a more extended application. * * * Qualifying words have been applied to several preceding sections where the nature of the provisions and the obvious sense required it. * * * Where the intention is manifest, a proviso or qualifying words or clauses found in the middle of a sentence may be placed at the end; or when inserted in one section, they may be applied to the matter of another section."

In commenting on the text from Sutherland, the court in this case say:

"The many cases cited in the notes to the text afford ample illustration of the many instances in which the general rule has found exceptions. In fact, the exceptions have been applied oftener than the rule."

The court in the same case express the rule as follows:

"A limiting clause is generally to be restrained to the last preceding antecedent, * * * unless there is something in the subject-matter which requires a different construction."

The court also quote with approval the following from 23 Am. & Eng. Enc. of Law, 435:

"If the context requires, the proviso may be construed as a limitation extending over more than what immediately precedes, or may amount to an independent enactment."

—and conclude as follows:

"Neither grammatical construction, punctuation, nor relative arrangement of the several parts of the section must be allowed to absolutely control. A common-sense interpretation is the safest and surest to apply, bearing always in mind the mischiefs to be remedied and the benefits to be secured by the law."

In *Wartensleben v. Haithcock et al.*, 80 *Ala.* 565, 1 *South.* 38, the court used this language:

"Though the proviso is found in a section, and immediately follows a particular phrase, its effect is not necessarily limited * * * to the same section. * * * When from the context, and a comparison of all the provisions, relating to the same subject-matter, it is manifest, that the object and intent were to give the proviso a scope extending beyond the section, and effect beyond the phrase immediately preceding, it will be construed as restraining or qualifying preceding sections relating to the subject-matter of the proviso, or as tantamount to an enactment in a separate section, without regard to its position and connection."

See, also, *Mayor of Cumberland v. Magruder*, 34 *Md.* 381; *United States v. Babbit*, 1 *Black*, 55, 17 *L. Ed.* 94; *Propst. v. So. R. R. Co.*, 139 *N. C.* 397, 51 *S. E.* 920; *Baggaley v. Pts. & Lake Sup. Iron Co.*, 90 *Fed.* 636, 33 *C. C. A.* 202.

[15, 16] In view of the law as above stated, is there a *casus omissus* in the statute under consideration? Does placing the proviso where it is in the act exclude its application to the department of elections, and in case the committees refused to furnish

lists as required by the act make such a fatal defect in the law? Whether or not there is a *casus omissus*, such as claimed, depends upon whether the proviso at the end of *paragraph* 2 is confined in its application to the antecedent words of that paragraph.

If said proviso can be held to apply also to paragraph four of the same section, there is no *casus omissus.* According to the authorities mentioned, the rule that a proviso applies only to the section or paragraph to which it is attached is subject to the qualification that the proviso is to be held to apply to other sections where it is clear that such was the legislative intent, or where such purpose is deducible from the enactment. In order to discover such intent or purpose, reference may be had to the entire act, including the object to be accomplished thereby. The object to be accomplished by the act in question was the taking a vote in two local option districts of the state on the question of license or no license.

The appointment of a department of elections was only a part of the machinery to accomplish the main purpose of the act. We may assume that the Legislature intended that the voters should be qualified to vote because that was essential to the election. They could be qualified in the City of Wilmington only through the department of elections which the Governor was required to appoint. We may further assume that the Legislature in creating a department of elections for the City of Wilmington and clothing the Governor with the power of appointing the members thereof intended to fully empower him to make the appointments; and certainly it did not intend that the appointment of such department should be prevented and the election fail because those persons whose duty it was to furnish the lists of names to the Governor refused to furnish them. The proviso shows that the Legislature had in mind such a contingency.

It is unquestionably the law, as we have seen, that a proviso may be held to apply to other paragraphs than the one to which it is attached if the context requires it, or if it is necessary to carry into effect the evident intention of the Legislature as it appears from the whole act. The Legislature has inserted a proviso in one paragraph which if placed in another paragraph of

the same section would make the entire act complete and work-able. The extension of the proviso will preserve the act, the confining of it will destroy the act, so far as it makes provision for the special election in the City of Wilmington. And, moreover, to make the proviso applicable to paragraph four will not require the change, elimination or addition of a single word. It would fit perfectly. It could apply to one paragraph as well as the other, and by covering both the legislative purpose as disclosed by the act is not defeated.

The language of the proviso is as follows:

"Provided, however, that if the said lists of names are not furnished as aforesaid, then and in that event the Governor shall appoint suitable persons having the qualifications provided for by this section."

The only reason urged why the proviso must be confined to the paragraph to which it is attached is the presence of the words "if said lists of names are not furnished as aforesaid."

But there can be no force in that point for the reason that the words would be just as appropriate and applicable to *paragraph* 4 or to both paragraphs. And then, it is a circumstance of some significance that the proviso states that the Governor shall, if no lists are furnished, appoint suitable persons having the qualifications provided for by *this section*. It does not say, having the qualifications provided for by *this paragraph*. This is an indication that the proviso was intended to be general and not special.

In determining whether a proviso is confined to the paragraph to which it is attached, it is permissible for the court to consider the entire act, the object to be accomplished, whether the context requires the proviso to be so restricted, and whether the intention of the Legislature that it shall have a wider applica-tion is clearly deducible from the enactment. It is certainly not clear that the proviso in the present case was intended to apply to *paragraph* 2 only. It is clear that the general intent of the Legislature can be carried out by extending the proviso to *para-graph* 4 and in that way only.

It may be that the Legislature failed to place the proviso in the most logical and appropriate place in the statute, but we are clearly of the opinion, for the reasons stated, that the words of the proviso were intended to apply to all lists that the committees were required to furnish to the Governor; and it makes no difference, therefore, where the proviso was placed in the section because it must be construed so as to carry out such legislative intent.

In determining this question, the court are not unmindful that "the purpose of all interpretations is the ascertainment of the intention of the law-makers;" that a statute must never be held to be unconstitutional or inoperative if it can be avoided; that the Legislature intends to impart to its enactments such a meaning as will render them operative and effective; and that later judicial decisions show that the courts are more diligent than they once were to sustain rather than defeat acts of the Legislature.

The court are clearly of the opinion, after a careful consideration of the entire enactment, including its context, language, arrangement and the evident intent and purpose of the act, that the proviso should be treated as an independent provision relating equally to *paragraphs* 2 and 4 of *section* 2, both of which deal with the method of appointment of registration officers.

If the proviso is treated as an independent provision it appropriately applies to *paragraph* 4 as well as *paragraph* 2, and carries out the manifest purpose of the Legislature.

Such being the court's construction of the proviso, it follows that there is no *casus omissus* as contended by the petitioners, and that the act is not inoperative on that ground.

CONRAD, J.:—The contest as to the constitutionality of the act of the General Assembly involved in the case now before this court narrows down to but one point; *i. e.*, whether the act by express enactment, or by reasonable and proper implication gave authority to the Governor to appoint the members of the Department of Elections for the City of Wilmington, in the way that has been done.

There can be no doubt but that the act intended to give proper authority to the Governor and to make said department of elections the main or leading instrumentality for holding the election designed by said act.

The *fourth paragraph* of *section* 2 of said act reads as follows, and is the only part of the act that touches upon the appointment of a Department of Elections for the City of Wilmington:

"The Governor shall, also, sometime in the month of June aforesaid appoint five suitable persons of the City of Wilmington for the purpose of conducting the election provided for in this act. The said persons so appointed shall be selected from a list of names submitted by the committee having charge of the campaign against license, and from a list of names submitted by the committee having charge of the campaign for license, and not more than three of said persons shall be appointed from either of said lists."

The record discloses that the committee for license did not furnish a list of names as suggested by the foregoing paragraph and the Governor, not having such a list, appointed two persons of his own choosing. It will be noticed that no provision was made for appointment in the event of lists not being furnished. This is the fatal and unfortunate omission of the act.

True it is that at the end of the *second paragraph* of *section* 2 in the act there is a proviso, in the case of the appointment of registrars for the county outside of Wilmington, that if the committees fail to furnish lists from which the Governor is to make the appointments, the Governor shall select persons of his own choosing.

This proviso clearly and unmistakably refers only to the appointment of county registrars and its location in the act, as well as the particular wording of the act itself, prevents the possibility of the implication that it applies to the appointment of the members of the Department of Elections for the City of Wilmington; the proviso, at the end of *paragraph* 2 of *section* 2 reads as follows:

Provided, however, that if the said lists of names are not furnished as aforesaid, then and in that event the Governor shall appoint suitable persons having the qualifications provided for in this section."

To take that proviso and put it at the end of *paragraph* 4 of *section* 2, making it applicable to the appointment of members of the board of elections, is to my mind unreasonable and unwarranted, and having been taught that words in a statute are to be taken in their ordinary meaning, I fail to understand how, when a proviso at the end of a section says "if said lists are not furnished as aforesaid," it can possibly refer to any lists except those recited in the foregoing section. Surely the words "said lists" furnished "as aforesaid" could not refer to lists that, at the time the clause was written, were not in the act at all, but found a place in a subsequent paragraph.

The proviso and its application are plain and without ambiguity. It needs no court to construe it. He who runs may read. The law books are full of opinions allowing courts to construe language that is doubtful, uncertain, vague or ambiguous, but here none of these qualities appear.

The proviso itself and its limitation to the paragraph to which it is attached is as plain as language can make it. If it was to have a wider meaning and to extend to other paragraphs, the legislators, and not the judges, were the persons upon whom devolved the duty of so enlarging its scope.

The act provides for a department of elections of five members. Three members were legally appointed, having been slected by the Governor from a list furnished to him in compliance with the act, but the two other persons named were not taken from lists so furnished. Until five members are appointed in accordance with the provisions of the act, no legal department exists. At present only three have been so appointed, and until two additional members are named, having an equally good title to their places, no department of elections is in being; and the three qualified members, even though they constitute a majority of the body, are incompetent to do business because the department itself has no existence. The board is not complete until it consists of five legally appointed members.

The suggestion was made in the course of the argument that the vacancies in the department could be filled by appointment

of the Governor, under *Chapters* 56 and 57, *Rev. Code* 1915, but where there has been no occupant of an office, no legal organization of the body, no vacancy can exist. There is no vacancy because no one has occupied the place.

The General Assembly is given full power to make laws. The duty is upon the legislators to so frame the laws that they can accomplish the purposes for which they are designed. It is the duty of the courts to construe and interpret the laws, not to make them. If a statute is so imperfectly drawn or contains omissions that render it impossible of being executed, that is the fault of the legislators and no blame can attach to the court if they find to that effect.

It is surely intended that acts passed by a Legislature shall be clearly and intelligently drawn; that the act in part, and in the whole, should on its face, and without the need of argument or explanation, have a clear and definite meaning; and it was not expected that courts should supply omissions or deficiencies in order to prevent a law from being inoperative. Such a course upon the part of courts tends to uphold a Legislature in the passage of laws that are incomplete and loosely drawn, and should be discouraged.

Where a statute is incomplete or defective, whether as a result of inadvertence, or because the case in question was not forseen or contemplated, it is beyond the province of the courts to supply the omissions, even though as a result the statute is a nullity. 36 *Cyc. p.* 1113.

In *McKuskie v. Hendrickson*, 128 *N. Y.* 555, 28 *N. E.* 650, the New York court said:

"While the courts may interpret doubtful or obscure phrases, and imperfect language in a statute, so as to give effect to the presumed intention of the Legislature, and to carry out what appears to be the general policy of the law, they cannot, by construction, cure a *casus omissus*, however just and desirable it may be to supply the omitted provision."

A Pennsylvania case (*Com. v. Gouger*, 21 *Pa. Super. Ct.* 217) says:

"Where an enactment is plain and sensible, and, according to any meaning, broad or narrow, popular or technical, which may be ascribed to the

Opinion.

words, does not apply to the case in hand, it is not permissible for the courts to add or omit words, in order to make it apply, even though it may be clear to them that the case is as fully within the mischief to be remedied as the cases provided for. This would be, not to construe, but to amend, the law, which is within the exclusive province of the Legislature."

A learned Virginia judge states the same doctrine as follows:

"It is safer in a case which admits of doubt, where the court finds itself at all involved in conjecture as to what was the legislative intent, that the particular object which may reasonably be supposed to have influenced the Legislature in the particular case should fail of consummation, than that courts should too readily exercise a power so delicate and so easily abused, as that of adding to or taking from the words of the statute."

To my mind the act is fatally defective in its failure to empower the Governor to name members of the department of elections in Wilmington in the event of either of the committees failing or refusing to submit a list of names from which the act requires such members shall be chosen. This omission or deficiency can only be corrected by the General Assembly, the court being powerless to supply the omission. The act therefore failing to provide for the conduct of the election in the City of Wilmington is rendered inoperative and void as far as the election in the City of Wilmington is concerned.

HEISEL, J.:—I am in accord with the findings of the majority of the court on all points excepting where they hold that the Legislature had the authority to provide for an election to be held on a day other than the next general election day, in the local option district in New Castle County, outside of Wilmington, after a request had been made to each house of the Legislature by a majority of the members elected from that district.

I agree with them that:

"The Legislature, therefore, could provide for an election in one or more of the local option districts of the state in either of two ways, viz.: Upon request or without request. Upon request being made, as provided by the Constitution, it was unquestionably the duty of the Legislature to provide for an election in that district, under the mandatory clause, as was said by court in the *Fountain Case*"

—but cannot agree that:

"The request that was represented is material in this case only so far as it may show upon which provision the Legislature acted in passing the statute."

The request was important in my opinion, in that it made operative immediately the mandatory provision of the Constitution, in so far as it related to the district in New Castle County, outside of Wilmington, and inoperative what had been up to that time the permissive or discretionary clause of the Constitution; and from that time on any action taken by the Legislature, at that session, upon the submission of the question of license or no license, in that local option district, must be taken under what is known as the mandatory provision.

I am unable to see how two provisions of the Constitution treating of the same subject-matter, one discretionary, the other mandatory, can be operative at the same time. How can a Legislature elect to act under a discretionary provision, if a mandatory provision is in operation? The terms are contradictory. If the Legislature has the right to elect how it shall act after the mandatory provision is in operation, there is, in fact, no mandatory provision, notwithstanding we all agree that the Legislature must act under such provision, whenever requested as provided in the Constitution.

When the constitutional convention conferred upon the Legislature the discretionary power to submit to the voters of the several local option districts of the state the right to vote upon the question of license or no license, it granted no unusual breadth of power. It had been held by an old case under the old Constitution that the right of the Legislature to submit to the vote of the people of the state the question of license or no license was not within the ordinary legislative power of this state, so the constitutional convention, by the first part or what is known as the discretionary clause of the local option article placed it therein; so that, thereafter, it became one of the ordinary powers, to be exercised, or not, by the Legislature, in its discretion, as any other ordinary power.

It is one of the functions and powers of a constitutional convention, often exercised, to restrict the ordinary legislative powers

of the Legislature, and when so restricted, if the Legislature act outside such restriction, the court does not hesitate to declare the result of such action unconstitutional and void. This I believe to be the remedy in this case. After giving the General Assembly the general power to act as provided in the local option article, it restricted that power, by compelling them to act, after request, if they act at all, in the way provided by the mandatory clause of the article. Of course the court cannot compel the Legislature to act in the way the court may think the Legislature is obliged by the Constitution to act, but it can do, as it does in other cases where the Legislature acts contrary to the mandate of the Constitution, declare such act unconstitutional.

Can there be any difference in the force of a mandate of the Constitution forbidding any action whatever upon a subject within the ordinary powers of the Legislature, and one providing that such action as is taken under such ordinary powers, must be taken in a certain way? I can see none. The remedy in each instance would be to declare the violation of such mandate unconstitutional. *Section* 19 of *Article* II provides that the General Assembly shall not pass any local or special laws relating to fences, the straying of live stock, ditches, and numerous other subjects; all ordinarily under the general powers of the Legislature to legislate upon in any manner they may choose, and leaves all matters relative to these several subjects to be dealt with under general laws. It is the duty of the Legislature to pass laws dealing with these subjects; and its general power for that purpose is as broad as the general power in this case, but the Legislature may not perform its duty in that respect, no matter how urgent the demand for such action may be and the court would be powerless to compel it to act; but if the Legislature should undertake to meet such urgent demands by passing local or special laws to exactly suit each case, can there be any doubt that such laws would be unconstitutional? So that my view of the situation before the court on this question is that if it becomes mandatory upon the Legislature, if the Legislature must provide for holding the election upon a general election day whenever the proper request is made to each house (and upon this we all agree, as well as did the court

in the *Fountain Case*), the general power to act is restricted by the mandatory clause, and the conclusion must inevitably follow that while the court cannot *compel* the Legislature to act in accordance with such mandate, yet if it does act, and provides for the election to be held in that district, it must be upon the general election day next following, as provided by the Constitution.

I think this conclusion sustained by *State v. Fountain*, in two sentences used by the court on *page* 531 of 6 *Pennewill*, on *page* 931 of 68 *Atl.*, in the report of that case, they said:

"The Constitution provides that the Legislature may submit the question of license or no license, to be voted on at such election and time as they deem proper. If, however, at *any time* a majority of the members of each house from any district shall request such submission, the Legislature must comply with such request."

If they *must* comply with the request, that is the end of the matter; they must comply with it, and, in the manner the Constitution provides.

Following the above quotation from *State v. Fountain*, the court, after a semicolon and as part of the same sentence, continued:

"And when acting upon such request, they shall submit the question to be voted on at the [next] general election."

The court meant "upon" to be synonymous with "after," so that the language could as well have been "and when acting *after* such request has been made they shall," etc., because the court would not assume that the Legislature would deliberately decline to act when the request had been made; and the words "when acting upon such request" could not have been used to express the thought that the Legislature had any discretion in the matter after the request had been made, because such a construction would make the last clause of the sentence absolutely inconsistent with the first clause of the same sentence.

What the court meant was that when the request was made the Legislature *must* comply with it as provided in the Constitution, and did not intend the words "and when acting upon such request" to suggest that there might be an occasion when the

Legislature would not be obliged to act upon a request after it had been properly made.

The word used to designate when the mandatory part of the section takes effect is "whenever." No other word or words could have been chosen to more clearly indicate that under every conceivable circumstance or condition the Legislature must submit the question to vote as therein provided. *State v. Fountain* construes it to mean "if, however."

Thus substituting "if, however, "for" whenever," as the court did in *State v. Fountain*, the provisions would read as follows:

"The General Assembly may from time to time provide by law for the submission to the vote of the qualified electors of the several districts of the state, or any of them, mentioned in *Section* 2 of this article, the question whether the manufacture and sale of intoxicating liquors shall be licensed or prohibited within the limits thereof.   *   *   *   'If, however,' a majority of all the members elected to each house of the General Assembly by the qualified electors in any district named in *Section* 2 of this article shall request the submission of the question of license or no license to a vote, of the qualified electors in said district, the General Assembly *shall provide* for the submission of such question to the qualified electors in such district at the next general election thereafter."

It seems to me impossible to escape the conclusion that, after request made, the Legislature, if it acts at all, is bound to fix the day of the election on the next general election day.

The opinions were certified to the Superior Court, whereupon the motion to quash the return to the rule was refused and the writ of prohibition was denied.