**CONTINENTAL COACH CRAFTERS CO., Petitioner,**

v.

**Lynne E. FITZWATER and Morris Levenberg, Respondents,**

**William Mills and Ann Mills, a Husband and Wife, Respondents-Intervenors.**

Superior Court of Delaware, New Castle County.

Submitted Oct. 11, 1979.

Decided Feb. 21, 1980.

Elwyn Evans, Jr., Wilmington, for petitioner.

Donald L. Bruton, Dept. of Justice, Wilmington, for respondents.

Reuben Clark, Community Legal Aid Soc., Inc., Wilmington, for respondents-intervenors.

LONGOBARDI, Judge.

## I

This petition for a writ of prohibition arises out of a series of landlord-tenant proceedings adjudicated in the Justice of the Peace Court in and for New Castle County. In October, 1977, Petitioner Continental Coach Crafters (hereinafter "Landlord") filed a summary action in the Justice of the Peace Court against Respondents-Intervenors William and Ann Mills (hereinafter "Tenants") for possession of the premises at 239 North Market Street, Apartment 5, Wilmington, Delaware, plus back rent allegedly owed at that time. Tenants filed a counterclaim pleading Landlord's breach of warranty of habitability as an affirmative defense and seeking damages of $21.00, the amount of rent paid during the time the premises were without heat. Tenants also sought to have a receiver for the building appointed pursuant to 25 *Del.C.* 5901 *et seq.*

Justice of the Peace William Garfinkel, who presided at the trial on December 7, 1977, dismissed the Landlord's claim, denied the Tenant's claim for damages and appointed the Division of Consumer Affairs as receiver. The court ordered the receiver to collect all rents due for December, 1977, and all rents accruing thereafter until further order of the court. On December 30, 1977, Judge Garfinkel ordered the receiver to make all necessary repairs to the heating system and all other repairs required to bring the property up to standards mandated by the Wilmington Fire and Housing Codes. The receiver was ordered to file a report with the court by January 20, 1978.

On January 23, 1978, a hearing was held to determine the rights and liabilities of the Landlord, Tenants and receiver. Justice of the Peace Lynne Fitzwater presided and ruled on January 24 that the receiver be discharged because "it had fulfilled the requirements of the [December 30, 1977] court order and . . . the continuing management of the property was requiring an outlay of money and personnel beyond the [receiver's] capabilities . . . ." The court noted specifically that necessary repairs had been made to the heating system and a supply of heating oil had been received. Since the rents collected by the receiver were insufficient to pay for the oil, the court ordered the Landlord to pay for the oil shipment. Judge Fitzwater's concern over the Landlord's failure to provide adequate heat during the winter months

was explicitly delineated in her January 24 order which provided in pertinent part:

It is the further judgment of this court that, despite the landlord's constructive eviction of them, the tenants may continue to remain in possession of the rental unit. It will be the landlord's continuing responsibility to provide necessary and timely maintenance of the premises. This includes provining [sic] sufficient heat so that any appropriate code requirements are met. Obviously, temperatures in the 30's are not appropriate for human habitability. Failure to abide by this judgment can mean that the landlord may be cited for contempt of court and may be eligible for the appropriate penalties thereof.

By February 2, 1978, the Landlord had failed to supply the Tenants with adequate heat and the Tenants filed a motion for a rule to show cause why the Landlord should not be held in contempt of court. On February 18, 1978, the Landlord finally complied with the court's order of January 24 by supplying Tenants with adequate heat. On February 22, 1978 at the hearing on Tenants' motion, Judge Fitzwater ruled that the Landlord had violated the January 24 order and that such action was a proper basis for holding the Landlord in contempt of court. A second hearing on the motion was scheduled for March 8 at which time Landlord's counsel moved to dismiss the proceedings for lack of subject matter jurisdiction. When Judge Fitzwater denied this motion, Landlord and its counsel left the courtroom. Another hearing was scheduled for the next day but prior thereto counsel for both parties stipulated that further evidence on the matter was not required. Counsel were ordered to submit briefs on the issue of whether the court could use its civil contempt power under 10 Del.C. 9506 to punish the Landlord for failure to obey the January 24 order in a timely manner. Judge Fitzwater removed the question of jurisdiction from the issues to be briefed.

On May 10, 1978, Judge Fitzwater ruled on the Tenants' motion. In her opinion, she indicated that her judgment of January 24 was issued pursuant to 25 Del.C. 5907(c) and that her order to the Landlord to supply adequate heat was ancillary to the order dismissing the receiver. Because she found she thus had authority to enter the January 24 order and that the Landlord had violated this order, Judge Fitzwater held the Landlord in contempt of court. The court fined the Landlord $80.05 and ordered this amount paid to the Tenants. The amount represented the excess gas bill incurred by the Tenants by their use of a gas oven as a source of heat from January 24, the date of the initial order for heat, to February 18, when the Landlord finally complied by providing adequate heat for the building.

Because the Landlord had not paid the contempt fine as ordered, on June 29, 1978 the Tenants filed a second motion for a rule to show cause why the Landlord should not be held in contempt of the court's May 10 order. After several continuances, the matter came on for decision before Justice of the Peace Morris Levenberg. On December 1, 1978, Judge Levenberg ordered the Landlord to comply with the May 10 order within fifteen days or face further contempt penalties. The Landlord did not comply with this order and on December 28, 1978 the Tenants filed a third motion for a rule to show cause why the Landlord should not be held in contempt of court. On January 12, 1979, the Landlord filed the instant petition for a writ of prohibition in this Court to prohibit the Justice of the Peace Court from enforcing by contempt proceedings the January 24, 1978 order of Judge Fitzwater because that order was assertedly beyond the jurisdiction of the Justice of the Peace Court. This Court issued a rule to show cause why the writ should not issue to respondents Fitzwater and Levenberg and ordered them to refrain from proceeding further in the matter until final disposition in the Superior Court. Thereafter, the Tenants filed a motion, which was granted, to intervene as respondents. A hearing was held on the petition on October 11, 1979 and the matter is now ripe for determination.

## II

The writ of prohibition is a common law remedial writ which the Superior

Court has power to issue. 10 *Del.C.* 562; *Family Court v. Department of Labor & Indus. Rel.*, Del.Ch., 320 A.2d 777, 779 (1974); *Fouracre v. White*, Del.Super., 102 A. 186 (1917). However, under the common law rules governing the writ, its availability is strictly limited. Prohibition is one of the extraordinary writs and will issue only if no other adequate remedy is available to the petitioner. *Milford School Dist. v. Whiteley*, Del.Super., 214 A.2d 951 (1979); *Matushefske v. Herlihy*, Del.Supr., 214 A.2d 883, 885, 886 (1965); High, *Extraordinary Legal Remedies*, § 770 (1874). Additionally, the sole purpose of the writ is to prevent an inferior tribunal from exercising jurisdiction over matters not legally within its cognizance or from exceeding its jurisdiction in matters properly before it. *Whiteley* at 953; *Matushefske* at 885; *Canaday v. Superior Court*, Del.Supr., 116 A.2d 678 (1955); High, *supra*, § 767. Moreover, the writ should issue only in clear cases of great necessity, *i. e.*, in cases where the inferior tribunal's lack of jurisdiction is clear rather than cases where the jurisdictional question is doubtful. *Knight v. Haley*, Del.Super., 176 A. 461, 464–65 (1934).

Applying these rules to the case at bar, the Court must initially focus on the Landlord's asserted bases for relief to determine if they are within the limited scope of review permitted in a prohibition proceeding.

While attacking the Justice of the Peace Court's authority to enforce the May 10 contempt order, the Landlord does not contend that Justices of the Peace do not have power to punish by contempt. Rather, the Landlord observes that the contempt power authorized by 10 *Del.C.* 9506 is limited to punishment for disobedience to "lawful" orders of the court. Thus, the Landlord's primary attack concerns the legality of the January 24 order to provide heat. In addi-

tion, the Landlord argues that the January 24 order was an injunction which Justices of the Peace have no statutory authority to issue. Alternatively, the Landlord contends that even if Justices of the Peace have been granted statutory power to issue injunctions, such delegation of equity powers violates Article IV, Section 10 of the Delaware Constitution of 1897. Further, the Landlord claims that even if the Legislature may delegate equity powers to Justices of the Peace and did so in 25 *Del.C.* 5907(c), the January 24 heat order was not "appropriate" within the meaning of the statute and was inconsistent with the trial court's findings of fact.[1] For analytical convenience, these arguments will be addressed in reverse order.

### III

The Landlord's argument that the January 24 order was inappropriate under § 5907(c) and inconsistent with the facts and thus not "lawful" within the meaning of the contempt statute is an attempt to have this Court consider the correctness of that particular order. A review on the merits is inappropriate in a prohibition proceeding where the proper scope of concern is limited to questions regarding the lower court's jurisdiction. Moreover, although there is no appeal from Justice of the Peace decisions in landlord-tenant cases of this nature, see 10 *Del.C.* 9570, the Landlord could have obtained a limited review of the propriety of the January 24 order by petitioning this Court for a writ of *certiorari*. See *Shoemaker v. State*, Del.Supr., 375 A.2d 431, 436–38 (1977); see also *Ray v. Wahl*, Del.Supr., 1340 Civil Action 1976 (unreported opinion by Judge Balick, June 13, 1977). In a *certiorari* proceeding any legal irregularities concerning the January 24 order which appeared on the record could have been corrected. See *Shoemaker* at 437; I

---

1. In connection with this point, the Petitioner has also argued that the January 24 order was in fact entered pursuant to the receiver discharge provisions of 25 *Del.C.* 5905, which do not authorize ancillary orders in connection with the discharge, rather than pursuant to the provisions of § 5907(c) which do authorize such ancillary orders. Although the January 24 or-

der may have been ambiguous on this point, the Landlord was free to seek a clarification of that order after it had been entered. At any rate, Respondent Fitzwater explicitly stated in her May 10 contempt order that § 5907(c) was the statutory authority under which the January 24 order had been issued.

*Wolley on Delaware Practice*, Sections 894–97 (1906).

The Court is mindful that "the writ [of prohibition] is never allowed to usurp the functions of a writ of . . . *certiorari*, and can never be employed as a process for the correction of errors of inferior tribunals." High, *supra*, § 772. Therefore, the Court will limit its review of the proceedings below to the jurisdictional issues raised and will not consider the Landlord's claim that the January 24 order was erroneous.

## IV

The Landlord's other arguments, *i. e.*, that Justices of the Peace have not been and could not constitutionally be granted injunctive powers in landlord-tenant matters, do raise substantial jurisdictional questions which the Court should address but only if no adequate remedy other than prohibition is available. Review of jurisdictional issues is also within the purview of a writ of *certiorari*. I *Wooley, supra*, Section 896. The question here, however, is not whether the alternative remedy is adequate generally but rather whether such remedy is adequate in view of the precise circumstances in which the petitioner for prohibition finds himself. 63 Am.Jur.2d *Prohibition* § 9 (1972).

Assuming, *arguendo*, the Landlord could at this late date petition for a writ of *certiorari* to review the jurisdictional basis for the January 24 and May 10 orders in the Justice of the Peace Court, nothing more than a protracted delay would be achieved by requiring it to go back and pursue this alternative. Such procedure would also burden the parties with significant additional litigation expenses. Therefore, under the circumstances of this case, the Court finds that the *certiorari* alternative is not an adequate remedy. *See VanDyke v. Superior Court*, Ariz.Supr., 24 Ariz. 508, 211 P. 576, 588 (1922). Consequently, the Court will proceed to consider the Landlord's claim that the January 24 heat order was beyond the power of the trial court to issue and thus could not be enforced through the court's contempt powers.

## V

Before addressing the question of whether the Legislature has statutorily conferred equity powers on Justices of the Peace presiding over landlord-tenant matters, the Court will consider the Landlord's claim that such a delegation of equity powers would violate the Delaware Constitution of 1897, Article IV, Section 10. This contention has been raised and rejected by the courts of this State in other contexts and I will not attempt to outline all of the historical underpinnings upon which this consistent conclusion has been based. Suffice to say Section 10 must be read in conjunction with Article IV, Section 17 of the Constitution (giving the Legislature the power to alter or repeal certain jurisdictional statutes) and 10 *Del.C.* 342 (which deprives the Court of Chancery of jurisdiction in any matter where an adequate remedy may be had at law before any other court of this State). These provisions give the Legislature authority to remove equitable matters from Chancery's jurisdiction if exclusive jurisdiction is conferred upon some other tribunal and the new tribunal is granted power to provide remedies equivalent to those available in Chancery. *DuPont v. DuPont*, Del.Supr., 85 A.2d 724, 729–30 (1951). So long as these two requirements are met, our constitutional principles are not offended by the delegation of equity powers to some court other than Chancery.

We thus come to the dispositive question in this case, *i. e.*, has the Legislature conferred upon the Justice of the Peace Courts subject matter jurisdiction over landlord-tenant cases of this nature and the power to grant equitable relief therein? This Court is of the opinion that the question must be answered affirmatively.

In *Wilkerson v. Better Homes of Laurel, Inc.*, Del.Ch., 618(S), 1976 Civil Action (unreported decision by Vice Chancellor Brown, August 30, 1976), appeal dismissed as moot, Del.Supr., 374 A.2d 841 (1977), the availability of equitable relief in a landlord-tenant

context in the Justice of the Peace Courts was considered. The *Wilkerson* plaintiffs were a group of tenants who brought an action in the Court of Chancery seeking an injunction against their landlord, a federally subsidized provider of low-income housing, to restrain the defendant from attempting to oust them from their rental dwelling units without appropriate legal process. The precise issue before the Court was whether a temporary restraining order should issue to require the landlord to resume provision of electricity to plaintiffs' dwelling units. The defendant had unilaterally cut off plaintiffs' electricity, which service was included in plaintiffs' leases, claiming that the leases had terminated. The Court found that two of the three traditional requirements for preliminary injunctive relief had been satisfied by the plaintiffs, *i. e.*, likelihood of ultimate success on the merits and probability of irreparable harm in the absence of immediate relief. The crucial issue in the case, therefore, was whether an adequate remedy existed at law which would, pursuant to 10 *Del.C.* 342, deprived Chancery of jurisdiction to act.

The *Wilkerson* Court resolved this issue by reference to the Delaware Landlord-Tenant Code. The Court noted that the Code was intended to cover all disputes between landlords and tenants, 25 *Del.C.* 5103, and that jurisdiction in such matters has generally been given to the Justice of the Peace Courts. The Court also reviewed several of the explicit statutory remedies available to tenants in the plaintiffs' situation, citing 25 *Del.C.* 5901 (receivership remedy), 25 *Del.C.* 5305 (tenants' option to terminate leases), and 25 *Del.C.* 5517 (treble damages to unlawfully ousted tenants). The first of these was an inadequate remedy because the receivership process was too time consuming to provide the immediate relief sought. The § 5517 remedy was also inadequate because the tenants did not at that stage desire damages but wanted only to be permitted to live under habitable conditions, *i. e.*, with electricity, until the other issues in the case had been litigated. Nor was the § 5305 remedy adequate since no

alternative low-income housing was available to the tenants if they chose to terminate their leases. The tenants argued that since these statutory remedies were inadequate, they were entitled to equitable relief (*i. e.*, restraint on the landlord from denying electricity) in the Court of Chancery.

The Court disagreed with Plaintiffs. Pointing to the provisions for summary proceedings for possession, 25 *Del.C.* Ch. 57, the Court held that § 5703(3), granting a cause of action to wrongfully ousted tenants, included tenants who, though not physically ousted, had been constructively ousted by a denial of essential services (like electricity) which rendered their premises uninhabitable. The Court then noted that § 5711(a) empowers Justice of the Peace Courts to "enter a final judgment determining the rights of the parties." The Court held that this broad provision includes the power to order a landlord to immediately resume provision of essential services to tenants in accordance with their leases. Because the Court thus found an adequate proceeding and remedy available to the tenants-plaintiffs in Justice of the Peace Court, relief in Chancery was denied.

Although there are differences between *Wilkerson* and the case at bar, the similarities between the two are substantial and this Court is persuaded by the legal analysis of the Vice Chancellor. The *Wilkerson* tenants had been constructively evicted in violation of their leases and various statutory provisions; the Tenants at bar had been constructively evicted in violation of implied, if not express terms of their leases and the Wilmington Housing Code § 34–42(g) and 25 *Del.C.* 5303(a)(7). In *Wilkerson*, the tenants sought injunctive relief to restrain the landlord from continuing to cause their constructive eviction which was denied by Chancery because such relief was available in Justice of the Peace Court; the Tenants here were granted, *inter alia*, injunctive relief by the Justice of the Peace Court to end the Landlord's constructive eviction of them.

The primary difference between the two cases is that in *Wilkerson* injunctive relief was held to be available in Justice of the Peace Court pursuant to 25 *Del.C.* 5711(a) while here such relief was held to be available pursuant to 25 *Del.C.* 5907(c). This is a distinction without substance so far as concerns the issue of a Justice of the Peace Court's power in otherwise appropriate circumstances to order injunctive relief. The Justice of the Peace Courts have exclusive jurisdiction in both Chapter 57 and Chapter 59 proceedings, 25 *Del.C.* 5701 and 5901, and the grant of power to fashion relief contained in § 5907(c) ("the Court may . . . order such action as would be appropriate . . .") *via* orders ancillary to discharge of a receiver is sufficiently broad to encompass the kind of relief ordered by Judge Fitzwater on January 24. Of course, in a § 5907(c) context, the statutory prerequisites must be met before any ancillary order may be entered but these considerations go to the correctness of the decision to issue the injunction and may not be reviewed by this Court in a prohibition proceeding once the lower tribunal's statutory power to issue the order has been established. Moreover, even if the January 24 order was not appropriate in light of the § 5907(c) prerequisites, it is not all clear that Judge Fitzwater could not have ordered the same relief in this case pursuant to her § 5711(a) powers in accordance with the *Wilkerson* holding since the proceedings in the Justice of the Peace Court were initiated under Chapter 57. Therefore, based on all the above reasons, this Court finds that the Justice of the Peace Court had jurisdiction to enter the injunctive provisions of its January 24, 1978 order.

It is noteworthy that a contrary holding in this case might well place the Tenants and others in similar circumstances on the horns of a dilemma. Given the holding in *Wilkerson*, constructively evicted tenants would not be able to obtain redress in Chancery regardless of the propriety of equitable relief under traditional principles governing its issuance. Were this Court to hold that such relief is not available in the Justice of the Peace Courts, I would be at a loss to say what court in this State, if any, would be able to provide the relief sought. If the effect of this Court's decision herein coupled with the *Wilkerson* holding would be to deny all possibility of equitable relief to constructively evicted tenants, the result would not only be patently unfair but also would probably violate the Remedy for Injury Clause, Article I, Section 9 of the Constitution of 1897. *See DuPont v. DuPont,* 85 A.2d at 729.

## VI

The ultimate result of all that has been said is that because the Justice of the Peace Court had jurisdiction to enter the order of January 24, 1978, it also had power to punish disobedience to that order *via* contempt proceedings under 10 *Del.C.* 9506. Consequently, the rule to show cause issued in this matter is discharged, the order restraining the Justice of the Peace Court from entertaining further contempt proceedings against the Petitioner is dissolved and the petition for a writ of prohibition is denied.

IT IS SO ORDERED.

