**WORKER'S COMPENSATION FUND**

v.

**INDUSTRIAL ACCIDENT BOARD**
and Kent Construction Co.

Civ. A. No. 06M–05–112–JOH.

Superior Court of Delaware,
New Castle County.

Submitted: July 17, 2006.
Decided: Aug. 4, 2006.

Stephanie J. Ballard, Deputy Attorney General, Department of Justice, for Workers' Compensation Fund.

William D. Rimmer, of Heckler & Frabizzio, P.A., Wilmington, DE, for Kent Construction Co.

## *OPINION*

HERLIHY, Judge.

Workers' Compensation Fund asks this Court to issue a writ of prohibition to bar the Industrial Accident Board from proceeding further with a matter before it in an action brought by Kent Construction Company for reimbursement from the

Fund. The Board ruled against the Fund on its interpretation of the statute of limitations and set the matter for a subsequent hearing. The Fund has also filed a declaratory judgment action seeking an interpretation of the statute of limitations. Kent Construction has moved to dismiss the Fund's complaint.

Kent Construction sought reimbursement from the Fund because one of its employees suffered a subsequent permanent injury while working for it. When an employee suffers a subsequent permanent injury and becomes totally disabled, the Fund becomes liable for total disability benefits. The Fund argued before the Board that Kent Construction's claim was filed beyond the applicable statute of limitations. The Board rejected the Fund's argument and set the matter down for a hearing on the issues surrounding the total disability claim and on the issue of reimbursement. The outcome of that hearing may trigger the applicability of the statute of limitations.

The Fund contends that by conducting a hearing over a matter which is barred by the statute of limitations, the Board has exceeded its jurisdiction. That in turn, it argues, warrants this Court to issue a writ of prohibition.

The Court holds it would be imprudent to issue the writ which the Fund seeks. The determination of when the statute of limitations begins to run involves factual or other matters which may be in dispute. It is also, therefore, not a matter for an all-encompassing opinion by means of declaratory judgment to draw a bright line between those claims which are time-barred claims and those which are not.

The Fund's complaint for a writ of prohibition and/or for declaratory judgment is **DISMISSED.**

1. 19 *Del. C.* § 2327.

## Factual Background

Kent Construction sought reimbursement from the Workers' Compensation Fund. The Fund, formerly the Second Injury Fund, is established to cover total disability benefits for employees who suffer a subsequent permanent injury rendering them totally disabled.[1] But the Fund's potential liability is not without a time limitation:

(a) Whenever a subsequent permanent injury occurs to an employee who has previously sustained a permanent injury, from any cause, whether in line of employment or otherwise, the employer for whom such injured employee was working at the time of such subsequent injury shall be required to pay only that amount of compensation as would be due for such subsequent injury without regard to the effect of the prior injury. Whenever such subsequent permanent injury in connection with a previous permanent injury results in total disability as defined in § 2326 of this title, the employee shall be paid compensation for such total disability, as provided in § 2324 of this title, during the continuance of total disability, such compensation to be paid out of a special fund known as "Workers' Compensation Fund"; any insurance carrier desiring reimbursement from the Fund shall file a petition for payment, provided all claim for reimbursement shall be forever barred unless the insurance carrier files a petition with the Department for reimbursement for payments under this section within 2 year after the date on which the employee was first paid total disability benefits following the subsequent permanent injury.[2]

The Fund's complaint in this Court indicates Kent Construction's employee,

2. 19 *Del. C.* § 2327(a).

James Smith, suffered a subsequent permanent injury on November 15, 1999 and started receiving total disability payments on November 30, 1999. Based on those dates, the Fund moved to have the Board dismiss Kent Construction's petition as barred by the above two year statute of limitations. The Board's decision rejecting the Fund's argument is attached to its complaint. That decision supplies some key details that are relevant to the resolution of the Fund's action in this Court. Those details are:

> The Employer responds that the first period of total disability in this case was terminated effective November 21, 2000, before the date of permanency and before the revised statute took effect. The first payment of total disability payment *after* Claimant's injury became permanent was allegedly December 10, 2004.[3]

The Board explained its reasons for denying the Fund's motion to dismiss in this way:

> The Board recently addressed this same issue in *Benton v. Allied Systems, Ltd.* and explained that "[t]o effect the overall intent of Section 2327(a), which is to share the burden of total disability payments in second injury cases, the most reasonable reading of the statute is that 'first payment' refers to the first payment of total disability *after the second injury becomes permanent.* An Employer cannot be expected to know that

reimbursement is even an option until the injury is permanent." *Benton v. Allied Systems, Ltd,* IAB No. 1191962, p. 20 (Feb. 22, 2006). Following the reasoning in *Benton,* the Board here rejects the Fund's interpretation of the statute. The Fund apparently interprets "the date on which the employee was first paid total disability benefits following the subsequent permanent injury" to refer to the first payment after the date of injury, not the first payment after the injury became permanent, an interpretation that would effectively eliminate the modifying word "permanent" from the statute. As in *Benton,* the Board rejects this interpretation and "interprets Section 2327(a) to require an employer to file a petition for reimbursement of total disability payments within two years after the first total disability payment following the date the second injury became permanent." *Id.* At 21. It was not clear from the presentation at the legal hearing whether the Fund disputes the date that total disability was first paid after the injury became permanent. To the extent the parties agree that this date was December 10, 2004, the Board finds that the statute of limitations began to run on that date and does not bar the petition in this case. However, if the Fund contests the relevant date, a decision on whether the statute of limitations bars this petition must await a full hearing on the merits of this case. Accordingly, the Board

---

**3.** *Smith v. Kent Construction Co.,* Hearing No. 1160813, April 12, 2006, pp. 2–3. There is a footnote to this quote which reads: "A March 30, 2001 compensation agreement submitted as an exhibit to the Board indicates the Employer and Claimant agreed that a permanent impairment of the back resulted from the November 15, 1999 work accident. Other agreements and orders indicate Claimant received total disability compensation from November 30, 1999 through November 21, 2000 and partial disability compensation beginning

April 6, 2001. A Board decision dated November 9, 2004 found that Claimant had been totally disabled since October 2, 2003 and awarded total disability benefits retroactively to that date. The Employer represented that the first payment of total disability after the Board decision was November 10, 2004. The Employer therefore asserts that the statute of limitations began to run on December 10, 2004 and does not expire until December 10, 2006."

denies the Fund's motion to dismiss at this time on statute of limitations grounds, with permission to renew the motion later under the circumstances outlined above.[4]

Following the Board's denial of the Fund's motion to dismiss, the Fund filed its complaint seeking a writ of prohibition and for a declaratory judgment.[5]

## Parties' Claims

Initially, the Fund contends that Kent Construction's motion to dismiss is premature. It asserts Kent Construction should first answer the complaint for the writ and then it should file its motion which would be followed by full briefing on whether issuing the writ is appropriate. It claims because of Kent Construction's motion, the Court is compelled to accept all well-pled allegations in its complaint as true. The Fund does not argue that the Board did not have original cognizance over the kind of action Kent Construction brought. It maintains, however, that the Board exceeded its jurisdiction by proceeding with a time-barred matter and that it has no adequate remedy at law. Accordingly, the Fund asserts, it is appropriate for this Court to entertain its complaint. The Fund's substantive argument is that when the Board said it would entertain an action barred by the statute of limitations, it exceeded its jurisdiction. By entertaining a matter which cannot be heard under those circumstances, the Board is compelling the Fund to expend unnecessary time and expense.

Kent Construction replies, of course, that the Board's ruling is proper and within its discretion. While titling it a "legal ruling," the ruling was fact dependent and showed that Kent Construction's petition could be timely. Its basic argument, however, is that the Fund's complaint in this Court is a circumvention of the normal appeal process. It contends the Fund's complaint, in reality, is an interlocutory appeal. Kent Construction also argues that to allow the Fund to have this kind of review opens the door to all sorts of interlocutory appeals on such issues, for instance, as a decision on whether a claimant is an independent contractor or an employee or whether the injury was in the scope of employment, etc.

## Applicable Standards

The Court concurs with the Fund's statement that Kent Construction's motion to dismiss filed before it has answered the complaint compels the Court to accept the Fund's well-pled allegations as true.[6] By implication so is the principle that on a motion to dismiss the Court must determine if the Fund can obtain its writ (and/or get a declaratory judgment) under any conceivable circumstances.[7]

## Discussion

■ This Court has the jurisdiction to issue a writ of prohibition to the Industrial Accident Board.[8] In the normal course of matters emanating from Board decisions, this Court is the first court to which an appeal is taken.[9] Despite the Fund's argument that Kent Construction's motion is premature, the Court views the procedural posture of this case to have ripened the issue of the appropriateness of whether a

---

4. *Id.*

5. The Board was named as a party defendant/respondent. The Board has taken no position in the matter before the Court.

6. *Precision Air, Inc. v. Standard Chlorine of Del., Inc.,* 654 A.2d 403, 406 (Del.1995).

7. *Lord v. Souder,* 748 A.2d 393, 398 (Del. 2000).

8. *Clendaniel v. Conrad,* 83 A. 1036 (Del.1912).

9. 19 *Del.C.* §§ 2349, 2350; 29 *Del. C.* § 10161(a)(8).

writ should issue. The Fund's argument that it is premature to consider whether to issue the writ is likely an effort to get the Court to address the merits of its statute of limitations argument (and rule in its favor).

The role of a writ of prohibition was explained in *Canaday v. Superior Court:*

The writ of prohibition is a writ issued by a superior to an inferior court to prevent such court from exercising jurisdiction over matters not legally within its cognizance, or to prevent it from exceeding its jurisdiction in matters over which it admittedly has cognizance. It is designed primarily to keep the administration of justice in orderly channels, and to prevent unwarranted assumption of power over persons or matters not within the legitimate cognizance of the inferior tribunal. *Clendaniel v. Conrad,* supra; *Knight v. Haley,* 6 W.W. Harr. 366, 176 A. 461; *Fouracre v. White,* 7 Boyce 25, 102 A. 186; 42 Am.Jur., Prohibition, §§ 2, 5.

Generally speaking, the writ of prohibition may not be distorted into a substitute for a writ of error for the correction of error, irregularity or mistake in the proceedings in the court below which can be reviewed by ordinary appellate process. 42 Am.Jur., Prohibition, §§ 8,30; 2 Bailey on Habeas Corpus, § 357a. The writ will be denied if the petitioner has another adequate and complete remedy at law for the correction of the asserted error of the court below. *Norton v. Emery,* 108 Me. 472, 81 A. 671; High on Extraordinary Legal Remedies, § 770; *Chew v. Superior Court,* 43 R.I. 194, 110 A. 605.[10]

■ The Fund, as noted, argues that it is premature for this Court to consider the propriety of issuing or not issuing the writ. It contends that Kent Construction's motion to dismiss does not put this matter in the proper procedural posture to entertain that decision. The Court disagrees:

It is a general rule that prohibition will not be issued unless the attention of the inferior court has been called to the alleged lack of jurisdiction, or it has indicated in some fashion its intent to proceed.[11]

The Fund bought to the Board's (the lower court's) attention its alleged lack of jurisdiction because of the running of the statute of limitations on Kent Construction's claim. The Board rejected that argument and said it would proceed. That act makes it appropriate to consider whether to issue the writ.

The Fund's complaint includes copies of Board decisions in this case and an earlier one cited by the Board in this case on the limitations issue. The Court, therefore, need not look beyond the Fund's complaint to determine the appropriateness of issuing the writ of prohibition.

The earlier Board decision was *Benton v. Allied Systems, Ltd.*[12] In that case, the Fund raised the issue of the statute of limitations as barring the reimbursement claim against it. Several portions of the *Benton* decision are instructive to the issues in this case.

Thomas C. Benton ("Claimant") suffered compensable injuries on April 26, 2000 while working for Allied Systems, Ltd. ("Allied Systems" or "Employer").* Claimant received compensation for to-

---

10. 116 A.2d 678, 681–2 (Del.1955).

11. *Matushefske v. Herlihy,* 214 A.2d 883, 885 (Del.1965).

12. Industrial Accident Board No. 1191962, February 20, 2006.

* The Employer's parent corporation, Allied Holdings, Inc., has filed for bankruptcy in the United States Bankruptcy Court for the Northern District of Georgia. By Order dated September 19, 2005, the Board found that the automatic stay pursuant to 11 *U.S.C.* § 362

tal disability effective April 26, 2000 at the rate of $434.68 per week. In a decision dated October 31, 2002, the Board found that proposes spinal fusion surgery was causally related to the April 26, 2000 work accident and denied Employer's petition to terminate total disability. Subsequently, disability payments were terminated by stipulation of the parties as of August 19, 2002 and then resumed effective December 13, 2002 and ongoing, according to an agreement on file with the Board. Additional agreements on file establish compensation for permanent partial disability to the lower left extremity, bladder, and lumbar spine as a result of the April 26, 2000 work accident. These agreements between Claimant and Allied Systems state that the disabilities began on February 21, 2004.

On March 24, 2004, Allied filed a Petition for Review requesting reimbursement from the Workers' Compensation Fund ("Fund"), formerly known as the "Second Injury Fund," pursuant to Title 19, § 2327 of the *Delaware Code*. The expert report submitted with the petition indicated Claimant has suffered a permanent low back injury in July 1990 in addition to the permanent impairment that resulted from the April 26, 2000 work accident. The Fund filed a Motion to Dismiss on July 8, 2004 alleging that Claimant worked for the same employer when he suffered the 1990 and 2000 injuries. In an Order dated September 28, 2004 and reaffirmed on reargument, the Board declined to consider the motion to dismiss until a full hearing on the merits, because of an additional allegation made by the Employer that Claimant had an impairment to his lower back that pre-existed the 1990 work accident

did not apply to the instant matter and ordered that the petition for review proceed.

as a result of traumas in 1977 and 1979. A full hearing on the merits of the Employer's petition was thus scheduled. In opposition to the underlying petition, the Fund argues that the statute of limitation bars relief, there was no charge of employer between the 1990 and 2000 accidents, and Claimant has no permanent impairment prior to 1990 that contributed to his current total disability.[13]

The Board rejected the Fund's position. There was another related issue concerning the statute of limitations argument before the Board in *Benton*. It concerned the fact that prior to July 2001, there was no statute of limitations on claims against the Fund. In July 2001, the limitations period was enacted.[14]

What is crucial to this current dispute from the *Benton* case is that the Board later found no original, that is first, permanent injury. Under the statute, the Fund's liability is not even triggered unless there is a first permanent injury followed by a later one rendering the employee totally disabled. The Board in *Benton* ultimately decided there was not that requisite first permanent injury. That meant the Fund was not liable for total disability benefits. As a practical matter, therefore, the Fund prevailed on the merits of the facts in *Benton*. That, in turn, meant that it could not appeal the Board's decision against it on the statute of limitations issue.

As with *Benton*, in this case the Board has stated it has certain threshold issues it needs to determine prior to ascertaining if the statute of limitation applies. That is why the subsequent hearing is necessary. Those issues are highlighted in the following portion of the Board's decision rejecting, for the moment, the Funds's argument which is repeated for sake of clarity:

13. *Id.* pp. 2–3, 16–17.

14. 72 Del. Laws c. 319.

The Employer responds that the first period of total disability in this case was terminated effective November 21, 2000, before the date of permanency and before the revised statute took effect. The first payment of total disability payment *after* Claimant's injury became permanent was allegedly December 10, 2004.* The Employer therefore asserts that the statute of limitations began to run on December 10, 2004 and does not expire until December 10, 2006.[15]

The Board also noted that it was not clear that there was an agreement on when the statute of limitations began to run. Because of that lack of agreement, the Board set the matter down for a full hearing on the merits. That, of course, is what happened in *Benton.*

It is conceivable, therefore, that the Fund could find itself in the same posture here as it did after *Benton* was decided on its merits. It succeeded on the merits rendering the statute of limitations issue moot and unappealable.

But having to go to a second hearing is another reason why it now argues this Court should issue the writ of prohibition. It contends it should not be put to the trouble and expense of going to a full hearing on the merits. If the Board followed its interpretation of the statute, it claims, there would never be a need for a subsequent hearing. Kent Construction

responds by saying that the dispute should go to a hearing on the merits and that issuing the writ now in this case circumvents the normal appellate process from the Board. The Fund counters that *Canaday* rejected that argument and said that avoidance of delay and unnecessary expense of going to final judgment is a reason for issuing a writ of prohibition.[16] It echos that sentiment here.

■ The Fund overstates the ruling in *Canaday.* The underlying proceedings in *Canaday* were initiated by a writ of foreign attachment against stock held by Canaday, an out-of-state resident. There was no potential factual dispute on jurisdiction, as here with the limitations issue, affecting the outcome of the case. That is a key distinction. Nor were there factual disputes in the other foreign attachment cases upon which the Supreme Court relied in *Canaday.* But *Canaday's* reasoning that avoidance of delay an unnecessary expense does not apply here. As *Benton* showed and as this matter may show, there are key threshold issues which effect the potential liability of the Fund for total disability benefits.

■ The case of *Steigler v. Superior Court*[17] provides further guidance about the limited role of a writ of prohibition. The issue of issuing a writ there arose in the context of a "proof positive" hearing in a capital murder case.[18] Such hearings

---

* A March 30, 2001 compensation agreement submitted as an exhibit to the Board indicates the Employer and Claimant agreed that a permanent impairment of the back resulted from the November 15, 1999 work accident. Other agreements and orders indicate Claimant received total disability compensation from November 30, 1999 through November 21, 2000 and partial disability compensation beginning April 6, 2001. A Board decision dated November 9, 2004 found that Claimant had been totally disabled since October 2, 2003 and awarded total disability benefits retroactively to that date. The Employer represented that the first payment of total disability after the Board decision was November 10,

2004. The Employer therefore asserts that the statute of limitations began to run on December 10, 2004 and does not expire until December 10, 2006.

15. *Smith v. Kent Construction Co., supra* p. 2.

16. *Canaday v. Superior Court,* 116 A.2d at 682.

17. 252 A.2d 300 (Del.1969).

18. Art. 1, § 13, Delaware Const.; 11 *Del. C.* § 2103.

are held to determine if the defendant is to be held without bail pending trial or bail needs to be set. The State has to present sufficient evidence to warrant holding a person without bail. The decision to hold without bail is not appealable. The unique circumstance in *Steigler* was the claim that to deny bail, Superior Court had relied upon a statement from the accused—Steigler—which was obtained in violation of his constitutional rights as set out in *Miranda v. Arizona*[19] and that evidence seized was taken in violation of his right not to be subjected to unreasonable search and seizures. Superior Court it was claimed, therefore, exceeded its jurisdiction by basing its decision to deny bail on evidence unconstitutionally obtained.

The Supreme Court continued "[P]rohibition will lie to bar the lower court from proceeding thereunder in violation of the defendant's fundamental constitutional rights." [20] The writ, however, was not issued in *Steigler* as the Court found no violation of Steigler's rights in how the disputed evidence was obtained.

There are, of course, no fundamental constitutional issues in this matter. When *Steigler* and *Canaday* are viewed together, a guide emerges. In *Canaday* the legal setting relating to jurisdiction contained no factual issues, and an early decision on jurisdiction over the party was not in itself appealable. In *Steigler*, the decision to deny bail was also not appealable. In both cases, therefore, key interlocutory non-appealable decisions were made going to the heart of a party's rights. While there were legal/factual decisions to be reviewed in *Steigler*, the essential point is that fundamental constitutional issues were at stake: right to bail and rights of an accused which were intertwined with the is-

sue of bail. In effect, there was no adequate remedy except by the writ process.

These kinds issues and considerations are absent here. Unlike the decisions in *Steigler* to admit certain evidence in the "proof positive" hearing which led to the decision to deny bail, the decision to reject the Fund's argument relates to decisions not yet made. In short, the statute of limitations issue is inextricably intertwined with ultimate factual issues not yet made. And those issues may be decided in a way which would place a statute of limitations issue before this Court in the normal appellate way.

There is additional case law guidance. The Court's independent research has revealed two cases where parties sought writs of prohibition in this Court concerning Board decisions. One is *Worrell v. Industrial Accident Board*.[21] In that case an employee/claimant sought a writ to stop him from having to undertake a medical test which the Board had ordered. This Court denied the complaint for the writ as it held he had an adequate remedy at law by the normal appellate process. The reasonableness of the test was a factual issue, this Court said, to be determined by later evidentiary hearing. The Court was also concerned that issuing the writ would create interlocutory appellate review of Board decisions.

The other decision is *Paolino v. Industrial Accident Board*.[22] The employer filed a petition with the Board to terminate total disability payments. While pending, the employer asked the employee to answer several medical and former employer-related questions. He refused. The Board ordered him to answer three similar questions which the Board requires when

---

19. 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

20. *Steigler*, 252 A.2d at 303.

21. 1997 WL 913500 (Del.Super.)

22. 711 A.2d 800 (Del.Super.1997).

certain other kind of claimant petitions are filed. The employee again objected and filed for a writ. The Court did not issue the writ. It held the decision was made in a particular case after a full legal hearing.[23]

These cases demonstrate several things. First, review was not sought by the normal appellate process. Second, review was sought of purely interlocutory matters involving discretionary Board decisions. Third, this Court (by two separate judges) expressed dismay at what it considered as abuse of the writ process.

This case does not involve use of the writ to review a *de minimis* matter. The issue of the applicability of the statute of limitations is not *de minimis*. It is potentially dispositive. Nevertheless, whether the statute of limitations even applies in this case must await further findings of the Board which will, if undertaken, be subject to regular appellate review.[24]

For this Court to issue a writ of prohibition now would be imprudent. As a result of numerous appeals to this Court, it is well-known that the issues the Board cited in *Benton* and this case are often disputed and even remain disputed on appeal. Those kinds of issues may or may not implicate or trigger the applicability of the statute of limitations in a particular case. The risk also is to issue a writ now means by implication the Court is rendering an advisory opinion.

The Court needs to be clear about its decision to dismiss the Fund's complaint and to not issue the writ of prohibition. The Court is saying that to reach the merits of that contention, the matter should be before it through the normal appellate process. Necessarily, therefore, it would also be inappropriate to entertain an action for declaratory judgment.

### *Conclusion*

For the reasons stated herein, Kent Construction Company's motion to dismiss is **GRANTED** and Worker's Compensation Fund's complaint for a writ of prohibition and declaratory judgment is **DISMISSED.** The matter should be set for a hearing.[25]

**IT IS SO ORDERED.**

23. *Id* at 803.

24. *See Eastburn v. Newark School District,* 324 A.2d 775 (Del.1974).

25. This conclusion renders moot the separate action for mandamus brought by Kent Construction Company and Hartford Mutual Insurance Company against the Department of Labor, Civil Action No. 06M–06–014. That action is dismissed.